Safran *v.* Mutual Life Insurance Company
of New York, Appellant.

Argued June 19, 1967. Before ERVIN, P. J., WRIGHT,
WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAUL-
DING, JJ.

*Tyson W. Coughlin,* with him *Matthew M. Strickler, Samuel C. Cantor,* of the New York Bar, and *Ballard, Spahr, Andrews & Ingersoll,* for appellant.

*David Berger,* with him *Norman C. Henss,* and *Cohen, Shapiro, Berger, Polisher and Cohen,* for appellee.

OPINION BY WATKINS, J., September 15, 1967:

This is an appeal from judgment n.o.v. entered by the County Court of Philadelphia in favor of the plaintiff-appellee, Moses A. Safran, and against the defendant-appellant, Mutual Life Insurance Company of New York, in the amount of $1585.17; and from judgment n.o.v. entered in favor of the appellee-insured on the counterclaim of the appellant insurance company.

The company had paid monthly disability payments to the insured on two life insurance policies from October 1956 until May 17, 1963, when it refused to continue payments. This action sought to recover $1350 with interest for benefits from that date until the institution of the suit. The company counterclaimed to recover benefits paid in the amount of $4600 upon the ground that the insured became ineligible for benefits in June of 1960, since, at that time "plaintiff was following and/or capable of following a gainful occupa-

tion and has so continued to the present date". The jury brought in a verdict for the company in the amount of $5980, the amount of the benefits claimed in the counterclaim, with interest, and found for the company on the insured's claim. Post trial motions were filed and the court en banc, with the trial judge dissenting, entered judgment n.o.v. in favor of the appellee on both claim and counterclaim.

At the time of trial, the insured was 67 years of age, spoke with a speech impediment, was hard-of-hearing and had walking difficulties as a result of a stroke and a number of heart attacks. The court below relates his history as follows:

"There is no question that the plaintiff was in good health in 1929 when the policies were issued. At that time he was 31 years of age. He came to the United States at the age of 13 and had little formal education. He made his living as a salesman and, in 1922, started his own jewelry business. He developed a business which had eighteen employees and sold jewelry in about 20 States.

"He had a stroke in 1932 and received disability benefits for about 15 months. In 1937 he was injured in an accident, sustaining a fractured knee. He received disability benefits on that occasion until he was able to resume work. In 1942 he had a heart attack and received benefits for the period of disability. He had several seizures in the years that followed. In 1947 he was hospitalized and received benefits until he was able to resume work. He has been under constant medical attention since 1949. In 1956 he had a severe attack and was hospitalized at the Jefferson Hospital. Plaintiff made claim for total and permanent disability. He submitted proofs of loss and, from time to time, when requested by defendant, furnished statements by his doctors. The defendant never requested a medical examination by its doctors.

"There is also no question that the plaintiff's physical condition has remained unchanged since 1956. He is required to lie in bed from about 7 P.M. each day until 9 or 10 the following morning. Upon any exertion he feels pain and is forced to gasp for breath.

"Dr. Joseph Aspel testified that the plaintiff was under his care from 1932 until 1956, when he moved to Florida after his discharge from the Jefferson Hospital. He has since seen the plaintiff on several occasions when the plaintiff came to Philadelphia. He testified that the plaintiff had an arteriosclerotic heart with coronary artery insufficiency.

"Dr. Samuel Bellet, a specialist in cardiovascular diseases testified in behalf of the plaintiff. He testified that the plaintiff has a diffuse vascular disease. He cannot engage in any activity which involves strain or effort.

"The defendant offered no medical testimony. It is undisputed that the plaintiff is totally and permanently disabled from carrying on a business or engaging in any type of employment."

The company's sole objection to the continuance of payments and its insistence upon its claim for restitution rests on the contention that beginning in 1960 the insured was engaged in a gainful occupation because of his purchase and sale of stock market securities.

Under the insurance policies in issue in this case the insured is entitled to benefits if he is totally and permanently disabled. This total disability is defined in the policies as ". . . any impairment of mind or body which continuously renders it impossible for the insured to follow a gainful occupation." Such a clause must receive a reasonable construction as otherwise a man must be a helpless invalid, or physical or mental "basket case" before he would be entitled to benefits. The Supreme Court in *Pearlman v. Metropolitan Life Insurance Co.*, 336 Pa. 444, 448, 9 A. 2d 432 (1939),

stated that total disability ". . . does not mean that the insured must be a helpless invalid in order to become entitled to benefits under such a policy, . . .". The purpose of such provisions is to provide against loss of earning power that is, if a man is rendered totally unable to carry on the trade, occupation or business for which he is fitted by education and training or experience he is totally disabled within the meaning of the policy. *Cobosco v. Life Assurance Company of Pennsylvania,* 419 Pa. 158, 213 A. 2d 369 (1965). The insured in this case was an immigrant who had received the equivalent of a sixth grade schooling in Russia and to his attendance at Brown Prep Philadelphia, for five months. The business he knew was the jewelry business. As the court below said:

"It is undisputed that the ordinary lifelong occupation of the plaintiff was either as a salesman or as a merchant, and there is no question that he is totally and permanently disabled from carrying on such occupation. The past history of the plaintiff establishes that, on the occasions when he was disabled prior to 1956, he always returned to work and notified the defendant to discontinue disability benefits. But in 1956 he sold his business and, because of physical disability, retired from the business and occupation which he had followed all his life. This did not mean that he was compelled to give up all activity.

"The fact that he went to the board room every day does not make him ineligible to obtain benefits. Many people go to the board room of the brokerage office to find diversion or entertainment in the same way that others visit courtrooms. To such people the moving ticker tape and the changes appearing in the prices posted on the board furnish an element of drama, suspense and excitement.

"As to the extensive transactions of the plaintiff, they were all conducted on his own behalf. They con-

stituted speculation and do not differ much from the activities of a man who goes to the race track every day or goes to his club to engage in a game of cards for money stakes."

It should also be pointed out that his wife accompanied him to the comfort of the board room and cared for him on the way and while there. They both bought and sold securities. What he did in the board room could well be done by this man, by telephone, if he were bedfast, under the care of his wife, or under the care of nurses around the clock. It might just as logically be claimed that benefits must stop because he engaged in poker games or gin rummy at high stakes with friends in his bedroom and that such income represented the following of a gainful occupation. As the court below said: "The activities are carried on in the hope of winning, but they do not constitute an occupation as that term is understood in its usual sense. Speculative activities carried on by one in his own behalf do not constitute a trade, occupation or business. No productive activities are involved. No goods are produced or services rendered."

The words of the policy must be reasonably interpreted and liberally construed in favor of the insured. "As the main reason for giving a liberal construction to the clause, the courts usually point out that a state of absolute helplessness rarely exists except in those cases in which the physical disability is accompanied by mental incapacity, and that it cannot be assumed that an interpretation which makes the clause practically valueless was contemplated by the parties." 149 A.L.R. 7, 12.

In *Cooper v. Metropolitan Life Ins. Co.,* 317 Pa. 405, 177 A. 43 (1935), the language to be construed was as follows: ". . . 'continuously and wholly disable and prevent the insured from performing any and every kind of duty pertaining to the occupation in which he

is engaged at the time of the accident'." The Supreme Court said at page 408: "While the words of the policy must receive reasonable construction and, literally interpreted, the words total disability to engage 'in any and every occupation of employment for wage or profit' would require that an insured be a helpless invalid before he would be entitled to benefits under the policy, this cannot be what the parties intended. It is rare that any man is incapacitated from doing some work; many a blind man weaves baskets; a man with both legs and one arm off can sit in a doorway and sell lead pencils, or act as a telegraph operator; but it cannot well be argued that either is not totally disabled. A reasonable interpretation of the words of the policy is, that the total disability to engage in any occupation or work for compensation or profit which is insured against, means inability to perform any of the duties of any occupation which the insured might be ordinarily capable of performing."

The pertinent clause of the insurance contract in the *Cobosco* case, supra, at page 163, provides: "The term 'total disability' as herein defined, shall, when used in this policy contract, be construed as and be co-extensive with the terms totally disabled, disabled and disability, and shall mean such inability of the insured to perform duties of any gainful occupation for which he may be reasonably fitted by reason of training, experience and accomplishment." The Supreme Court reversed this Court and sustained a verdict for the insured. The Court laid great stress on the occupation of the insured at the time of the execution of the contract as a hardware merchant and said at page 166: ". . . the question of 'total disability' must be decided in the context of the ability of the insured to perform the acts or duties necessary to the operation of a business owned by him, the cases hold that the insured must prove that the personal efforts that he

himself is capable of making in the operation of the business are insubstantial and unimportant, by reason of their low quality or quantity, in relation to the character and amount of work required to carry on the business."

The clause in the instant case reads as follows: "Disability shall be considered total when there is any impairment of mind or body which continuously renders it impossible for the Insured to follow a gainful occupation."

The insured was in the jewelry business at the time of the execution of the insurance contracts and it was due to his disability that he was forced to discontinue and sell that business. The company does not contend that he is not totally disabled, even under their interpretation of the clause, as regards the performance of his duties in the jewelry business nor, for that matter, do they contend that his qualifications, with his disability, fit him for any other business or occupation. It is quite conceivable that at the time of the execution of the contracts when he was a successful businessman, that he then invested some of his income in the stock market but it is inconceivable by any stretch of reasonableness that the parties at that time, were thinking of total disability in relation to stock market investments. Common sense dictates that the parties intended the policies for which the premiums were paid to insure his earning power in his trade or business from total disability.

A reasonable and liberal interpretation of the clause will not deny benefits to this insured because of his stock market investments and the court below properly entered judgment for the insured because of the failure of the company to meet its burden of proof that his total disability was not such as to render it impossible for the insured to follow a gainful occupation.

The counterclaim of the company is without merit. It is admitted that the insured was totally disabled at the time he filed his application. He never made any false statement or committed any fraud. His physical condition remains unchanged and there is no prospect of improvement. He furnished proofs of his condition whenever requested and has always been available for examination if the company so desired. Payments voluntarily made under a contract of insurance cannot be recovered in the absence of fraud or misrepresentation. *Sebastianelli v. Prudential Ins. Co.*, 337 Pa. 466, 470, 12 A. 2d 113 (1940); *Kline v. State Employes' Ret. Bd.*, 353 Pa. 79, 44 A. 2d 267 (1945).

Judgments entered in favor of the insured on the claim and counterclaim are affirmed.