414 A.2d 355

**McKinley FIRESTONE and Gladys Firestone, his wife, Appellants,**

v.

**LUTHER FORD SALES, INC.**

Superior Court of Pennsylvania.

Submitted April 12, 1979.

Filed Nov. 9, 1979.

E. David Harr, Greensburg, for appellants.

Ronald J. Bergman, Greensburg, for appellee.

Before PRICE, HESTER and MONTGOMERY, JJ.

HESTER, Judge:

Presently before the court is appellants' appeal from the order of the lower court en banc dismissing exceptions taken from a non-jury verdict entered in favor of appellee. We affirm.

It is firmly established that our scope of review is such that we cannot reverse a lower court's findings of fact in a non-jury trial unless it appears clearly and convincingly from the record that the evidence cannot support said findings. The *Bell Telephone Company of Pennsylvania v. Cruice*, 178 Pa.Super. 308, 116 A.2d 355 (1955); *Allen v. Insurance Company of North America*, 175 Pa.Super. 281, 104 A.2d 191 (1954); *Hydro-Flex, Inc. v. Alter Bolt Company, Inc.*, 223 Pa.Super. 228, 296 A.2d 874 (1972). We reiterate that the law of the Commonwealth is such that the findings of fact of a trial court, sitting without a jury, approved by a court en banc, are entitled to full force and weight of a jury verdict; and that such findings should not be disturbed unless it appears that the trial court abused its discretion or that its findings lacked evidentiary support. The reasoning for this rule is set forth in *Hydro-Flex, Inc.* (supra):

"The granting of a new trial on the grounds that the findings of the trial judge were against the weight of the evidence is for the trial judge, and such a determination should not be reversed on appeal unless there has been a clear and palpable abuse of discretion. *Bell Telephone Co. v. Cruice*, 178 Pa.Super. 308, 116 A.2d 355 (1955); *Beitch v. Mishkin*, 184 Pa.Super. 120, 132 A.2d 703 (1957). In the instant case, the judge was in a position to hear the conflicting evidence and to evaluate the credibility and demeanor of the witnesses. Indeed, the entire case turns on a question of credibility and a 'resolution of conflicting testimony.' In such a case, the findings of the trial judge where supported by the record should not be disturbed on appeal in the absence of manifest error. *Scientific Living*

*v. Hohensee,* 440 Pa. 280, 270 A.2d 216 (1968); *Drummond v. Drummond,* 414 Pa. 548, 200 A.2d 887 (1964). This is especially true where the trial judge's findings have been approved by a court en banc. *Selway v. Selway,* 426 Pa. 224, 231 A.2d 872 (1967); *Craft Reupholstering Co. v. Rosenberg,* 420 Pa. 43, 216 A.2d 49 (1966)."

The facts in the instant case may be briefly summarized as follows: Appellants brought this action in assumpsit to recover $2,703.00, with interest from December 31, 1974, which sum allegedly represented the total amount paid appellee through his agent, servant, employee or salesman pursuant to an oral contract with said purported agent, servant, employee or salesman for the purchase of a 1974 Saab automobile. The first payment by check under date of December 30, 1974 was made payable to appellee; the balance of $2,200.00 by check dated December 31, 1974 was made payable directly to Charles D. Demangone, appellee's purported agent, servant, employee or salesman. Contrariwise, appellee contended that no oral agreement ever existed between appellants (through their son acting as their agent) and appellee (with the said Charles D. Demangone acting as appellee's agent); that the first check above referred to in the amount of $503.00 was properly applied by appellee in its normal course of business on account of the purchase of a totally different automobile, and the second check in the amount of $2,200.00 and payable to the said Charles D. Demangone directly, was tendered to him by appellee's son as a personal loan to satisfy certain gambling debts.

With respect to the $503.00 check, Mrs. Magdalene Volk, appellee's head bookkeeper for eight years, testified that:

"Mr. Demangone told us that he sold the Plymouth to this Mr. Brown and that Mr. Firestone (appellants' son) owed him money, and the difference were going to be applied what Mr. Demangone owed up at Luther Ford Sales . . . ." (T.83)

"Q And was one hundred and twenty dollars applied to Mr. Demangone's account?

A Yes.

Q And the remainder was applied to what?

A   It was the Brown deal.

Q   Okay, during that time did you ever receive a purchase order for the sale of 1974 Saab?

A   No." (T.84)

Thereafter, Mario Luther, the owner of the appellee corporation which bears his name, testified:

"Q   This two thousand two hundred dollar check you testified you said you never saw that?

A   Well to the best of my knowledge, no." (T.97)

Mr. Demangone testified:

"Q   Was that five hundred and three dollars, did it—did part of that five hundred and three dollars have anything to do with the sale of 1974 Saab?

A   No, sir, it did not, not a dime." (T.59–60)

Continuing in his testimony, Mr. Demangone specifically stated that there was never an agreement between himself and appellants' son to purchase the Saab car. (T.63). Additionally, Demangone testified that he never promised appellants' son that he would deliver the Saab title to him, which statement is supported by the fact that the previous owner of the Saab would not release title unless he received approximately $4,000 for its sale.

Finally, Demangone testified with respect to the $2,200.00:

"This twenty-two hundred dollar check, we lost the money down at the gambling joints." (T.65)

"Q   Wasn't there a transaction between William Firestone acting on behalf of his parents to purchase a 1974 Saab from you the latter part of December of 1974?

A   No, there was not." (T.79)

Following the close of testimony, the trial court stated on the record:

"Well there is no purchase order in this case. Two checks were given before the Saab automobile was given according to Mr. Wagner's testimony. After the arrangements he gave possession of the car which was after the dates he traded the car in January, 1975, which was after the two checks were given. Now there is a conflict of testimony

as to what purpose those two checks were given. The amount of the sale of the Saab, according to the testimony was way below the value of the Saab car. I think that the suit is against the wrong people here, why you didn't sue Demangone. I think it's a very serious question as to the purpose of these checks, why they were given and not given for the purpose of the Saab car. Therefore, I am going to find a verdict in favor of the Defendants. (T.100–101)

Thereafter the court entered a non-jury verdict in favor of appellee.

■ Appellants' filed timely exceptions which were argued before a three panel court en banc. The court en banc, by written opinion, found that there was a diametric conflict in testimony by the parties and the resolution of the conflict of testimony in favor of appellee was properly exercised by the trier of fact since there was sufficient evidence to support same. The trial court concluded that no agreement for the purchase of the 1974 Saab automobile between the litigants ever existed; the court en banc concluded that said finding was supported by sufficient evidence. We agree.

Order affirmed.