Ervin S. FLEISHMAN, M.D.

v.

GENERAL AMERICAN LIFE INSUR-
ANCE COMPANY, Valley Forge Fi-
nancial Group, Inc., and Craig G.
Hacker

Appeal of: General American
Life Insurance Company

Superior Court of Pennsylvania.

Argued Sept. 23, 2003.

Filed Nov. 21, 2003.

Reargument Denied Jan. 29, 2004.

Jonathan D. Herbst, Philadelphia, for appellant.

Andrew F. Susko, Philadelphia, for appellee.

Before: STEVENS, BOWES, and MONTEMURO *, JJ.

MONTEMURO, J.:

¶ 1 This is an appeal[1] from an order granting the motion of Appellee/Plaintiff below for a new trial in an action based on, *inter alia*, claims of breach of contract.

¶ 2 In November of 1994, Appellee, a primary care physician,[2] was struck by an automobile as he was crossing the street, first being thrown into the windshield and then to the ground. After two unsuccessful attempts to return to work, he thereafter filed a claim for total disability against Appellant, the issuer of his two disability insurance policies, on the basis that cognitive deficiencies and memory problems resulting from the accident prevented him

---

* Retired Justice assigned to Superior Court.

1. We note that Appellee has filed a cross appeal "solely to preserve all issues raised in his brief in support of his post trial motions." (Brief of Cross Appellant at 4).

2. Appellee was board certified in internal medicine.

from practicing medicine competently. Appellant denied his claims and the underlying action was instituted.

¶ 3 After a jury trial concluded with a verdict in favor of Appellant, Appellee filed post trial motions claiming error, *inter alia*, in the court's charge to the jury. The court agreed that its instruction on disability was faulty, and granted a new trial. This appeal followed.

¶ 4 Appellant presents this Court with a claim that the trial court improperly granted a new trial after erroneously concluding that the jury charge on disability was incomplete. It also assigns error to the court's refusal to grant its motion for nonsuit or for a directed verdict based on allegedly false statements made by Appellee on his disability insurance application, and to the court's having permitted Appellee to present evidence regarding future benefits. We will address these claims seriatim.

¶ 5 We first note that the "grant or refusal of a new trial will not be reversed on appeal absent an abuse of discretion or error of law which controlled the outcome of the case." *Gouse v. Cassel*, 532 Pa. 197, 615 A.2d 331, 335 (1992). "An abuse of discretion exists where the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias or ill-will." *Harman v.Borah*, 562 Pa. 455, 756 A.2d 1116, 1122 (2000).

¶ 6 The crux of Appellant's argument is that the court's instruction to the jury on disability was correct as given, and that the instruction requested by Appellee was not required by Pennsylvania law.

¶ 7 The jury was charged was follows:

So [Appellee] in this case is seeking to recover benefits under a disability policy—actually two of them—issued by [Appellant], General American Life Insurance. [Appellee] has the burden of proof in establishing his right to benefits, and on the base policy he has the burden of proving that by a preponderance of the evidence. He is entitled to benefits under that base policy if he meets the definition of total disability that the law requires under the terms of this insurance. The base policy provides that disability benefits are to be awarded if the insured—and now I'm going to quote from the policy. This is what the policy says—as a result of sickness or injury or a combination of both, you are unable—meaning the injured person—to perform all the material and substantial duties of your regular occupation.

(N.T., 9/22/00, at 73–74).

¶ 8 The trial court, in reviewing Appellee's claim of error relied on this Court's holding in *Petrasovits v. Kleiner*, 719 A.2d 799, 805 (Pa.Super.1998), for the proposition that

the court may grant a new trial where there is an error of law which controls the outcome of the case. The courts have further held that an error in [the] charge is sufficient ground for a new trial if the charge as a whole is not clear or has a tendency to confuse the jury, rather than clarify a material issue. Specifically, the Court should grant the new trial on the ground of inadequate charge where there is a prejudicial omission of basic or fundamental information.

(Trial Ct. Op. at 2) (internal citations omitted).

¶ 9 In post trial motions Appellee had argued and the trial court agreed that the challenged instruction gave no guidelines as to the meaning of total disability. Appellee assigned as error the court's having addressed only a quantitative measure of

disability when a qualitative measure should also have been explained. Appellant's position comprehends the notions that the instruction was complete as given; that Pennsylvania law does not recognize the quantitative/qualitative distinction or require additional instructions where, as here, Appellee "identified no specific duty or task essential to his medical practice that he was unable to perform," (Appellant's Brief at 15); and that the jury simply disbelieved him.

¶ 10 Appellant is superficially correct that a quantitative as opposed to qualitative measure of incapacity is not at issue, since the distinction is not, in fact, one made in those specific terms by Pennsylvania law. However, crucial contract terms must be explained as the law understands them, and this the instruction did not do. Although it was, as the trial court states, incomplete rather than incorrect, given the significance of the term total disability in understanding the case, the court's failure to provide a comprehensive definition was fatal. As the court observes,

> In the instant case, the record is replete with expert testimony that [Appellee's] memory deficit renders him unable to perform "all' of the material and substantial duties of a physician as set forth by the policy. There is testimony by [Appellee's] experts as follows: (1) That [Appellee] was having a hard time learning and recalling new information (2) That [Appellee] suffered permanent loss of executive functioning (3) That [Appellee] is not able to perform as an internist.

(Trial Ct. Op. at 4) (citations to the record omitted).

¶ 11 The question then becomes what was omitted. To make this determination, an examination of the policy language is necessary. The policy definitions of "Total Disability and Totally Disabled" read:

> as a result of Sickness or Injury or a combination of both, you are unable to perform all the material and substantial duties of your regular occupation for the first 24 months.[3]

> After that, you will be considered Totally Disabled if you are unable to perform all the material and substantial duties of any occupation for which you may be fitted by education, training or experience. You must be under the regular care of a Physician, other than yourself, unless you furnish proof satisfactory to us that future or continued care would be of no benefit.

(General American Disability Income Policy at 3.01).

¶ 12 It should be kept in mind that ambiguities in an insurance contract must be construed in favor of the insured and against the insurer. *Prudential Prop. and Cas. Ins. Co. v. McAninley*, 801 A.2d 1268, 1273 (Pa.Super.2002), and that an ambiguity exists if the policy language lends itself to more than one construction. *Lititz Mut. Ins. Co. v. Steely*, 567 Pa. 98, 785 A.2d 975, 978 (2001). Further, the question of "whether ambiguity [in a contract] exists cannot be resolved in a vacuum ... but must instead be considered in reference to a specific set of facts." *Id.* (citation omitted).

¶ 13 In the policy at issue here, the words "unable to perform all the material and substantial duties" could be interpreted to mean that total disability connotes an incapacity to perform any material or substantial duty of the insured's regular occupation, to perform any single one, or to

---

**3.** It should be noted that in correspondence to Appellee denying his claim, Appellant's representative omitted the word "all" when quoting the policy. *See* Letter from Anthony Willson, 3/25/99, at 2.

perform any of several of the required duties. *Compare, e.g., Cooper v. Metropolitan Life Ins. Co.*, 177 A. 43 (1935) (terms of policy specifically refer to inability to engage in "any occupation"). As the trial court correctly points out, our case law avoids interpreting the language used to describe total disability literally; otherwise, an insured would be required to "be a helpless invalid before he would be entitled to benefits under the policy." *Bundy v. Nat'l Safety Life Ins. Co.*, 349 Pa.Super. 381, 503 A.2d 417, 422 (1985) (quoting *Cooper, supra* at 44). Since the policy language here, unlike that in *Cooper*, limits the necessity for a demonstration of deficiency to the claimant's regular occupation, the matter of competency, which is what Appellee means by "qualitative," necessarily becomes critical for the jury's understanding. Thus the Pennsylvania Supreme Court in *Cobosco v. Life Assurance Co. of Pennsylvania*, 419 Pa. 158, 213 A.2d 369, 373 (1965), observed that "the insured must prove that the personal efforts that he himself is capable of making in the operation of the business are insubstantial and unimportant by reason of their low quality or quantity, in relation to the character and amount of work required to carry on the business." The *Cobosco* Court concluded that the insured's ability to perform some less strenuous and less critical acts in connection with regular work would not bar him from recovery. Thus, if, as part of the practice of internal medicine, the insured is unable to remember, *e.g.*, protocols for the administration for certain drugs, his/her ability to prescribe, undeniably an integral part of the physician's obligation, is significantly diminished. Although *aides memoire* may ameliorate the problem to a certain extent, the doctor's prior training, which previously facilitated proper management of patient needs, becomes seriously compromised. Accordingly, a "material or substantial duty," that is,

the anticipation of the course of an illness or disease, and subsumed in that knowledge the ability to forestall problems, cannot be effectively fulfilled. The deficit is therefore not simply one for which easy compensation exists, but one which poses actual danger to patients. Although there are clearly some aspects of the practice of internal medicine which could be performed, the necessary knowledge and skills to be applied do not exist independently of each other or of less specifically medical functions; these are interrelated activities. Because Appellant was able, with difficulty, to go through the motions of practicing medicine for a short period after the accident does not remove the impediments to competent practice he suffers.

¶ 14 In *Safran v. Mutual Life Ins. Co. of New York*, 210 Pa.Super. 408, 234 A.2d 1, 3 (1967), this Court held that the purpose of the limiting language in disability policies "is to provide against loss of earning power that is, if a man is rendered totally unable to carry on the trade, occupation or business for which he is fitted by education and training or experience he is totally disabled within the meaning of the policy." That is the case herein. Moreover, the United States Supreme Court has held that "[t]he mere fact that one has done some work after the lapse of his policy is not of itself sufficient to defeat his claim of total permanent disability. He may have worked when really unable and at the risk of endangering his health or life." *Lumbra v. United States*, 290 U.S. 551, 559, 54 S.Ct. 272, 78 L.Ed. 492 (1934). Here the danger is not necessarily to the insured, but to those who could be irreparably harmed by his disability. Thus, neither temporary employment terminated because of incapacity nor the limited ability to perform some of the duties of the occupation disqualify the insured from recov-

ery of benefits. Neither of these matters were made clear to the jury. Accordingly, the trial court exhibited no abuse of discretion in granting a new trial.

¶ 15 Appellant's next two issues, that the trial court erred in failing to grant its motion for nonsuit and/or directed verdict, and in permitting Appellee to present evidence regarding future benefits, seek either a reversal of the trial court's new trial ruling or alternatively a ruling that in a new trial evidence of Appellee's future disability is inadmissible.

¶ 16 The first matter here concerns Appellant's request for rescission of Appellee's policies on the basis of alleged misrepresentations made by Appellee on a disability insurance application. The basis of this claim is provided in the allegations of Appellee's Complaint. There Appellee alleged that in addition to the personal disability policy with Appellant, he was also covered by a group disability policy provided by the employer to whom he had sold his medical practice. It is alleged that Appellant's agent, despite being aware of the group coverage, solicited him to buy additional coverage in the form of a rider to the original policy as well as a second policy. Appellee further alleges that Appellant's agent advised him not to list the group insurance provided by his employer on the application for the additional coverage as he was not paying the premiums and was therefore not the owner of that policy. Appellant argues that Appellee's failure to disclose the existence of the group coverage on the application justifies rescission of the policy, and thus its motion for nonsuit, or later for a directed verdict, should have been granted.

¶ 17 A motion for a non suit provides "a means of testing the plaintiff's evidence at the close of the plaintiff's case." Pa.R.C.P. 230.1, Explanatory Comment—2001. It is to be entered only in cases where the plaintiff has clearly not established a cause of action despite the resolution of all evidentiary conflicts in the plaintiff's favor, and with all reasonable inferences drawn from the evidence viewed most favorably to the plaintiff. "A compulsory non-suit is proper only where the facts and circumstances compel the conclusion that the defendants are not liable upon the cause of action pleaded by the plaintiff." *Parker v. Freilich*, 803 A.2d 738, 744–45 (Pa.Super.2002) (quoting *Hong v. Pelagatti*, 765 A.2d 1117, 1121 (Pa.Super.2000).

¶ 18 Because the denial of a motion for nonsuit does not dispose of all claims and all parties, *see* Pa.R.A.P. 341(b)(1), it is not a final order, and is thus not appealable. Insofar as the directed verdict or judgment notwithstanding the verdict claim is concerned, the standard of review is the same for both: the appellate court will reverse the trial court's decision to grant or deny either of these motions only when we find an abuse of discretion or an error of law that controlled the outcome of the case. *Joseph F. Cappelli & Sons v. Keystone Custom Homes, Inc.*, 815 A.2d 643, 647 (Pa.Super.2003). For either to be granted, the facts must be clear and there must be not room for doubt. *Forgang v. Universal Gym Co.*, 423 Pa.Super. 416, 621 A.2d 601, 602 (1993). The events surrounding Appellee's completion of the insurance application form were described in diametrically opposed terms by Appellee and the agent. In any decision whether to direct the jury's verdict, all such contradictions are to be resolved in favor of the non-moving party, and the trial court "must accept as true all evidence which supports that party's contention and reject all adverse testimony." *Fetherolf v. Torosian*, 759 A.2d 391, 393 (Pa.Super.2000), *appeal denied* 568 Pa. 700, 796 A.2d 983 (2001) (citation omitted). As

such, the trial court properly denied Appellant's motion as the matter became one of credibility for the fact finder which never reached this question.

¶ 19 Appellant's final claim is that the trial court erred in admitting evidence of the permanency of Appellee's disability and of his prognosis or prospects for recovery. The admission or preclusion of evidence is another matter within the sound discretion of the trial court whose decisions will not be reversed by this Court absent an abuse of discretion or an error of law. *Cacurak v. St. Francis Med. Ctr.*, 823 A.2d 159, 165 (Pa.Super.2003). Appellant argues that because the policy "does not provide for benefit payments into the future, nor does it provide for automatic benefit payments based upon a claim of permanent disability," (Appellant's Brief at 29), evidence concerning future benefits was irrelevant and prejudicial. In fact as the language quoted above from the policy indicates, the efficacy or otherwise of "future or continued care" is at least contemplated, which suggests that Appellee bore the burden of proving the nature of the condition which such care could or could not ameliorate. Accordingly, the evidence was properly admitted.

¶ 20 Order affirmed.[4]

---

4. In view of our disposition of this appeal, we need not address the issues raised in Appellee's cross appeal, which would require resolution only in the event the new trial order were reversed.