**Patricia GORMAN and Paul Gorman, Her Husband, Appellants**

v.

**Brenda COSTELLO, Appellee.**

Superior Court of Pennsylvania.

Argued Jan. 10, 2007.

Filed July 27, 2007.

---

Robert C. Ewing, Media, for appellants.

Michael G. Bradley, Media, for appellee.

BEFORE: STEVENS, McCAFFERY, and KELLY, JJ.

OPINION BY McCAFFERY, J.:

¶ 1 Appellants, Patricia Gorman and Paul Gorman, appeal from the judgment entered following the denial of their motion for post-trial relief. After careful review of the certified record, the parties' briefs and applicable law, we vacate the judgment and remand for a new trial.

¶ 2 The facts and procedural history underlying this appeal are as follows. On January 30, 2003, as Appellant was driving,[1] her vehicle was struck by a vehicle driven by Appellee, Brenda Costello–Viola.[2] Appellant was taken by ambulance to the hospital, where she underwent a CT scan of her head and x-rays of her chest, spine and pelvic areas. The x-rays revealed no fractures but did indicate degenerative disc disease in the lower part of the lumbar spine. She was released from the hospital on the same day.

¶ 3 Four days after the accident, Appellant consulted Dr. Robert F. Sing, an osteopathic physician, for neck and lower back pain. Dr. Sing diagnosed bilateral cervical muscle spasm. Despite subsequent physical therapy, Appellant continued to have pain in her lower back. On March 14, 2003, Appellant had an MRI scan of her lumbar spine, which indicated mild degenerative disc disease usually associated with

---

1. References herein to the singular "Appellant" refer only to Patricia Gorman. Appellant Paul Gorman, Patricia's husband, was not in the vehicle at the time of the accident.

2. The responding state trooper testified that Appellee told him she had been on her cell phone at the time of the accident. (Notes of Testimony ("N.T."), 5/30/06, at 184). Appellee contended that her vehicle slipped on a patch of black ice. (N.T., 5/31/06, at 132).

arthritis. Appellant underwent a second MRI on September 23, 2003, which indicated a herniated disc and mild degenerative disc disease. A subsequent electromyography test indicated that there was nerve irritation in a portion of the lower spine.

¶ 4 On May 27, 2004, Appellants filed a negligence action against Appellee. In preparation for trial, Appellants filed proposed jury instructions, including, among other things, a detailed definition of factual cause as contained in the Pennsylvania Suggested Standard Civil Jury Instructions ("SSJI Civ") 3.25.[3]

¶ 5 On May 30, 2006, a two-day jury trial began, during which two medical experts testified. Dr. Sing, the osteopathic physician who had treated Appellant, testified that while Appellant had degenerative spinal conditions prior to the accident, she experienced no pain from those conditions until after the accident. (N.T., 5/31/06, at 38, 40).[4] He also testified that "we all have ... degenerative spines at 50 years old ... [but] ... not all of them are symptomatic and sometimes it takes an event, lifting a heavy box, a car accident, or some event to the spine that causes the chronic pain to set in...." (Id. at 38). Dr. Sing testified he believed that the herniated disc discovered on the second MRI was related to the trauma of the accident, and that other experts agreed with him. (Id. at 40–41). Dr. Sing also testified as to Appellant's ongoing therapy, treatment and medication for chronic back pain. (Id. at 35–36).

¶ 6 Dr. Richard Bennett, a board-certified neurologist, testified on behalf of Ap-

pellee via video conference. He stated that he had examined Appellant 2½ years after the accident and had reviewed her x-rays, CT scan and MRIs. Based thereon, he stated he had concluded that Appellant had age-related degenerative changes, but "no evidence of any impairment that would have been traumatically induced and related specifically to the accident." (Id. at 115). He also testified that "she may have had a muscle strain ... [but] any injuries associated with the [accident], be it a sprain or strain, would have long since resolved" and that the accident had not caused any permanent effect on Appellant's daily activities. (Id. at 116). Dr. Bennett conceded that there were findings from the MRI, such as the herniated disc, upon which he did not comment in his report. (Id. at 120).

¶ 7 On May 31, 2006, after two days of testimony, the trial court gave its charge to the jury, which included the following instructions read directly from SSJI Civ 3.00 and 6.03:

> Plaintiff claims that she was injured by the negligent conduct of the Defendant. The Plaintiff has the burden of proving her claims. The Defendant denies the Plaintiff's claims and so the issues for you to decide in accordance to [sic] the law as I give it to you are[:] was the Defendant negligent and was the Defendant's conduct a factual cause in bringing about injury to the Plaintiff?

> \* \* \*

> If you find that the Plaintiff did have a pre[-]existing condition that was aggra-

---

**3.** The third edition of the SSJI Civ was published in October 2005, one month after Appellants filed their proposed jury instructions. In the revised edition, the definition of factual cause was removed from instructions 3.00 and 3.25, and inserted in instruction 3.15. This change led to some confusion in the instant case. *See infra.*

**4.** The trial court also concluded that Appellant had experienced no pain from degenerative disc problems until after the accident. (Trial Court Opinion, dated October 13, 2006, at 3 n. 2).

vated by the Defendant's negligence, the Defendant is responsible for any aggravation caused by the accident. I remind you that the Defendant can be held responsible only for those injuries or the aggravation of a prior injury or condition that you find was factually caused by the accident.

(N.T., 5/31/06, at 143, 153).

¶ 8 At the end of the jury charge, attorneys for both parties requested a sidebar conference at which they asked the trial judge to give an instruction as to "the point of factual cause." (*Id.* at 155). After discussion among the trial court and the attorneys regarding the proper paragraph number to be read from the most current version of the SSJI Civ [5], the judge noted that she had already read SSJI Civ 3.00 and indicated that she would read SSJI Civ 3.15 to the jury. (*Id.* at 157). The trial court then read the following **portion** of 3.15 to the jury:

> The Plaintiff must prove to you that the Defendant's conduct caused the Plaintiff's damages. This is referred to as factual cause. The question is[:] was the Defendant's negligent conduct a factual cause in bringing about the Plaintiff's damages? Conduct is a factual cause of harm when the harm would not have occurred absent the conduct. An act is a factual cause of an outcome if in the absence of the act, the outcome would not have occurred.

(*Id.* at 158–59.) Appellant's attorney objected at the conclusion of the additional instruction, stating that it was much shorter than the previous version, which. was "more explanatory." (*Id.* at 159–60).

¶ 9 The jury returned a verdict finding that Appellee was negligent, but that the negligence was not a factual cause of Appellant's injuries. As a result, the jury did not reach the question of damages.

¶ 10 Appellants' post-trial motion requesting judgment notwithstanding the verdict and a new trial on the issue of damages only was denied. Appellants filed a motion for reconsideration, to which was annexed a letter from the Chair of the Civil Jury Instructions Subcommittee. The letter indicated that it was "the intent of the Subcommittee that [the definition part of Instruction 3.15] be charged in order that the jury is aware of the definition of 'factual cause.'" (Letter from Lee. C. Swartz, Esq. to Robert C. Ewing, Esq., dated June 27, 2006). The motion for reconsideration was denied on July 10, 2006.

¶ 11 Appellants filed this timely appeal raising the following two issues:

A. Did the trial court [commit] reversible error when only a small portion of the suggested jury instruction on "factual causation" was read and did not include any notice that [Appellee's] conduct need not be the only factor in contributing to [Appellant's] injuries in order for [Appellant] to recover?

B. Was the jury's verdict inconsistent and against the weight of the evidence when the jury found negligence but no factual causation in light of [Appellee's] concession that [Appellant] was injured in a serious collision?

(Appellants' Brief at 2).[6]

■ ¶ 12 Our standard of review regarding jury instructions is limited to de-

---

5. The sidebar discussion indicated some confusion as to the re-numbering of the relevant paragraphs of the SSJI that had occurred in the recent revisions.

6. Based on our disposition of the first issue, it is unnecessary to address Appellants' second issue challenging the jury verdict.

termining whether the trial court committed a clear abuse of discretion or error of law which controlled the outcome of the case. *Quinby v. Plumsteadville Family Practice, Inc.,* 589 Pa. 183, 197, 907 A.2d 1061, 1069 (2006).

> Error in a charge is sufficient ground for a new trial if the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue. A charge will be found adequate unless the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said or unless there is **an omission in the charge which amounts to a fundamental error.** In reviewing a trial court's charge to the jury we must look to the charge in its entirety.

*Id.,* 907 A.2d at 1069–1070 (citations and quotations omitted) (emphasis added). *See also McManamon v. Washko,* 906 A.2d 1259, 1271 (Pa.Super.2006) (stating that the challenged words or passage may not be taken out of context of the whole of the charge); *Fleishman v. General American Life Ins. Co.,* 839 A.2d 1085, 1087 (Pa.Super.2003) (holding that where there is a prejudicial omission of basic information in the jury instructions, the court should grant a new trial).

¶ 13 There is guidance with respect to how to fashion appropriate jury instructions on the issue of factual cause in negligence cases in SSJI Civ 3.15. The relevant portion of the instruction provides as follows:

### 3.15 FACTUAL CAUSE

The plaintiff must prove to you that the defendant's conduct caused the plaintiff's damages. This is referred to as "factual cause." The question is: "Was the defendant's negligent conduct a factual cause in bringing about the plaintiff's damages?"

Conduct is a factual cause of harm when the harm would not have occurred absent the conduct. An act is a factual cause of an outcome if, in the absence of the act, the outcome would not have occurred.

\* \* \*

*[Use the following if you have not already used Instruction 3.00 or if you wish to reiterate the definition of "factual cause" to the jurors.]* [In order for conduct of a party to be a factual cause, the conduct must not be fanciful or imaginary, but must have played a real role in causing the injury.] Therefore, in determining factual cause, you must decide whether the negligent conduct of the defendant was more than an insignificant factor in bringing about any harm to the plaintiff. Under Pennsylvania law, conduct can be found to be a contributing factor if the action or omission alleged to have caused the harm was an actual, real factor, not a negligible, imaginary, or fanciful factor, or a factor having no connection or only an insignificant connection with the injury. However, factual cause does not mean it is the only, primary, or even the most important factor in causing the injury. A cause may be found to be a factual cause as long as it contributes to the injury in a way that is not minimal or insignificant.

To be a contributing factor, the defendant's conduct need not be the only factor. The fact that some other cause concurs with the negligence of the defendant in producing an injury does not relieve the defendant from liability as long as [his][her] own negligence is a factual cause of the injury.

The negligence of a defendant may be found to be a factual cause of a plaintiff's harm even though it was relatively mi-

nor as compared to the negligence of [the other defendant or] the plaintiff. In effect, the test for factual causation has been met when the conduct in question has such an effect in producing the harm as to lead reasonable persons to regard it as one of [the contributing causes that is neither insignificant nor inconsequential considering all the circumstances.]

[*Use the following summary definition of "factual cause" if you have used Instruction 3.00 and do not want to reiterate the entire definition again.*] [Remember, a factual cause is an actual, real factor, although the result may be unusual or unexpected. A factual cause can not be an imaginary or fanciful factor having no connection or only an insignificant connection with the injury. Although a factual cause can not be minimal or insignificant with regard to the injury, it can be relatively minor in relation to other factors and need not be quantified as being either considerable or large.]

SSJI Civ 3.15 (brackets and italics in original.)

██ ¶ 14 In the case *sub judice,* Appellants assert that because there was confusion over the SSJI, the court did not read the entire instruction. (Appellants' Brief at 6). Our review of the transcript indicates that the trial court read the instruction as far as the first phrase of the bracketed portion of the third paragraph, *i.e.,* *"Use the following if you have not already used Instruction 3.00,"* and, without reviewing the definition that followed, concluded that there was no need to continue with reading SSJI 3.15 to the jury because it had already provided the jury with SSJI 3.00. Thus, according to the SSJI itself,

the jury was not fully instructed as to the definition of "factual cause."

¶ 15 This Court has previously ruled that when juries are given incomplete instructions, a new trial is required. Jury instructions must contain correct definitions of legal terms. *See, e.g., Jeter v. Owens–Corning Fiberglas Corp.,* 716 A.2d 633 (Pa.Super.1998) (remanding for a new trial after a determination that the trial court erred in providing jury with an incorrect definition of "substantial factor" [7]); *see also Fleishman, supra* at 1087–1089 (concluding that the trial court's failure to provide jury with a complete definition of "total disability" required a new trial).

¶ 16 While we recognize that the SSJI are not binding on trial courts, the SSJI are nonetheless instructive. *See Commonwealth v. Bracey,* 831 A.2d 678, 687 n. 8 (Pa.Super.2003). In the case *sub judice,* a complete definition of factual cause was available to the trial court both from SSJI Civ 3.15 as well as from the proposed jury instructions submitted to the court prior to the commencement of the trial. The trial court simply omitted the definition from its instruction. We determine that without a complete definition of factual cause, the jury was lacking an essential tool needed to make an informed decision based on correct and complete legal principles relevant to its verdict on the issue of damages. *See Jeter, supra.* We conclude that the trial court's omission of the definition "amounts to a fundamental error" requiring a new trial. *Quinby, supra* at 197, 907 A.2d at 1070. Accordingly, we remand for a new trial.

¶ 17 Judgment vacated. Case remanded for a new trial. Jurisdiction relinquished.

¶ 18 KELLY, J. files a Dissenting Opinion.

---

7. The term "factual cause" replaced the previously-used terms "substantial factor" and "legal cause." See Subcommittee Note to Suggested Standard Jury Instruction Civ. 3.00.

DISSENTING OPINION BY KELLY, J.:

¶ 1 I respectfully dissent. I agree that the trial court perhaps read the italicized caveat, pertaining to SSJI 3.00, too literally, particularly in light of the SSJI Chairman's response to Appellant's inquiry.[8] However, it is well-settled that an allegedly faulty instruction does not merit a new trial unless the jury was misled or there was an omission amounting to a fundamental error. *Lockhart v. List*, 542 Pa. 141, 665 A.2d 1176, 1179 (1995). "In reviewing a trial court's charge to the jury, we must not take the challenged words or passage out of context of the whole of the charge, but must look to the charge in its entirety." *Jeter . v. Owens–Corning Fiberglas Corp.*, 716 A.2d 633, 635 (Pa.Super.1998). We should be especially cautious about awarding a new trial based on departure from the SSJI, as the suggested instructions are for guidance and reference purposes only. *See Carpinet v. Mitchell*, 853 A.2d 366, 374 (Pa.Super.2004), *appeal denied*, 586 Pa. 706, 889 A.2d 1212 (2005).

¶ 2 Instantly, the only factual cause dispute is whether Appellant's injuries were caused or exacerbated by the accident in any way, or whether they were solely the result of her pre-existing injuries. In fact, the crux of Appellant's argument is: "It was [Appellee's] position that [Appellant's] ongoing pain was caused by this pre-existing condition. It is possible to recover for negligence if there are other factors producing [Appellant's] pain. This is the core and basic concept of 'factual causation.'" (Appellant's Brief at 8). However, the trial court explicitly instructed the jury on this issue:

Damages should be awarded for **all** injuries caused by the accident even if the injuries caused by the accident were more severe than could have been foreseen because of [Appellant's] prior physical condition or a preexisting medical condition was aggravated by the accident. If you find that [Appellant] did have a preexisting condition that was aggravated by [Appellee's] negligence, [Appellee] is responsible for **any aggravation** caused by the accident.

(N.T., 5/31/06, at 152–53) (emphases added). Based on the jury instructions as a whole, I cannot agree that the jury was misled in any way to believe that Appellant's pre-existing injuries precluded them from finding that Appellee's negligence was nonetheless a factual cause of Appellant's injuries. *See Jeter, supra* (noting appellate court must examine jury instructions as whole). Accordingly, I would not remand for a new trial based on the jury instructions.[9]

■

---

8. I add that the Chairman also indicated that this caveat would be addressed in future editions. (*See* Letter from Lee C. Swartz, Esq. to Robert C. Ewing, Esq., dated June 27, 2006).

9. I offer no opinion as to Appellant's weight of the evidence claim.