J-A07012-17

J-A07013-17

2018 PA Super 125

JENNIFER M. STRAW AND THOMAS P. STRAW, INDIVIDUALLY AND AS CO-ADMINISTRATORS OF THE ESTATE OF ELIJAH C. STRAW, DECEASED; AND ROWAN J. STRAW, A MINOR, BY AND THROUGH HIS PARENTS AND NATURAL GUARDIANS, JENNIFER M. STRAW AND THOMAS P. STRAW

v.

KIRK A. FAIR AND GOLON MASONRY RESTORATION, INC.

v.

PITTSBURGH LUBES, INC. D/B/A JIFFY LUBE, TOWER AUTO SALES & SERVICE, NATIONAL AUTOMOTIVE PARTS ASSOCIATION-NAPA AUTO PARTS T/D/B/A NAPA

v.

THOMAS P. STRAW

APPEAL OF: GOLON MASONRY RESTORATION, INC.

IN THE SUPERIOR COURT
OF
PENNSYLVANIA

No. 742 WDA 2016

Appeal from the Judgment Entered April 28, 2016
In the Court of Common Pleas of Allegheny County
Civil Division at: G.D. No. 2013-003294

JENNIFER M. STRAW AND THOMAS P. STRAW, INDIVIDUALLY AND AS CO-ADMINISTRATORS OF THE ESTATE OF ELIJAH C. STRAW, DECEASED; AND ROWAN J. STRAW, A MINOR, BY AND THROUGH HIS PARENTS AND NATURAL

IN THE SUPERIOR COURT
OF
PENNSYLVANIA

GUARDIANS, JENNIFER M. STRAW AND
THOMAS P. STRAW

v.

KIRK A. FAIR AND GOLON MASONRY
RESTORATION, INC.


v.


PITTSBURGH LUBES, INC. D/B/A JIFFY
LUBE, TOWER AUTO SALES & SERVICE,
NATIONAL AUTOMOTIVE PARTS
ASSOCIATION-NAPA AUTO PARTS
T/D/B/A NAPA


v.

THOMAS P. STRAW

APPEAL OF: KIRK A. FAIR

No. 743 WDA 2016

Appeal from the Judgment Entered April 28, 2016
In the Court of Common Pleas of Allegheny County
Civil Division at No.: G.D. 13-003294


BEFORE:  OLSON, STABILE, and STRASSBURGER, JJ.*

DISSENTING OPINION BY STABILE, J.:                    **FILED  MAY 11, 2018**

The Majority would vacate the judgment entered in favor of the Straws

and remand for a new trial based on its belief that the trial court erred in

granting summary judgment in favor of Additional Defendants, including

_____

* Retired Senior Judge assigned to the Superior Court.

J-A07012-17

Straw.[1]  I believe the trial court correctly determined that Additional Defendants, Jiffy Lube, Tower Auto, NAPA Auto Parts, and Thomas Straw (collectively "Additional Defendants"), were entitled to summary judgment because Fair's conduct was a superseding cause of the accident, thus relieving Additional Defendants from liability.  Therefore, I dissent.

Eight months prior to this May 1, 2012 tragic motor vehicle accident, Tower Auto performed a required annual state inspection on the Straw vehicle and serviced the hood latch by spraying it with lubricant to achieve proper functionality.  Five months before the accident, Straw returned his vehicle to Jiffy Lube, where the oil had been changed, to advise an employee the hood of his car was not closing properly.  The employee performed some work on the hood to get it to close.  In March 2012, three months before the accident, while at a NAPA Auto Parts store, Straw requested that a store employee look at his hood latch.  The employee advised him that the hood latch was working properly and the car was safe to drive. Three months and several hundred miles later, this accident occurred after the hood on Straw's vehicle opened while he was driving.  Straw bought his vehicle to a controlled stop in the center northbound lane of Route 28 because he could not see the road.

Upon bringing his vehicle to a stop, Straw activated his hazard lights. Thereafter, Defendant Fair, acting in an extraordinarily negligent manner as

_____

[1] Like the Majority, I too am of the opinion that we have jurisdiction to entertain this appeal.

- 3 -

will be described *infra*, violently crashed into the rear of the Straw vehicle, killing six-year-old Elijah Straw and severely injuring Thomas, Jennifer and Rowan Straw. The question thus presented is whether Fair's actions were a superseding cause relieving the Additional Defendants of liability for any antecedent negligence. For reasons more fully detailed below, I do not find it necessary to examine the issues of duty and causation vis-à-vis the Additional Defendants as the Majority so thoroughly has done, because I believe the superseding negligence of Fair makes that analysis unnecessary.

In every negligence action, a plaintiff must prove, *inter alia*, that a defendant's actions were both the proximate cause and cause in fact of the plaintiff's injury. **Reilly v. Tiergarten Inc.**, 633 A.2d 208, 210 (Pa. Super. 1993). Proximate cause is a question of law to be determined by a judge and must be established before the question of actual cause can be submitted to a jury. **Id.** This question of proximate or legal causation essentially regards whether the negligence, if any, was so remote that as a matter of law the actor cannot be held legally responsible for the harm that occurred. **Id.** A court must determine whether an ordinary person would foresee that an injury would be a natural, probable outcome of the act complained of. **Id.** As the Majority correctly recognizes, conduct is a proximate cause of a plaintiff's harm when the conduct is "a substantial factor in bringing about the harm." Majority Opinion at 52 (quoting **Jones v. Montefiore Hosp.**, 431 A.2d 920,

923 (Pa. 1981)).[2]  As this Court explained in **Brown v. Philadelphia College of Osteopathic Medicine**, 760 A.2d 863 (Pa. Super. 2000):

> Proximate cause "is primarily a problem of law" and "it is a Pennsylvania court's responsibility to evaluate the alleged facts and refuse to find an actor's conduct the legal cause of harm 'when it appears to the court *highly extraordinary* that [the actor's conduct] should have brought about the harm.'"  [**Bell v. Irace**, 619 A.2d 365, 367 (Pa. Super. 1993)] (emphasis in original).  Thus, proximate cause must "be determined by the judge and it must be established before the question of actual cause is put to the jury." **Reilly** [**v. Tiergarten Inc.**, 633 A.2d 208, 210 (Pa. Super. 1993)].

---

[2] The principle that conduct is a proximate cause of a plaintiff's harm when the conduct is a "substantial factor" in bringing about the harm is well entrenched in our jurisprudence.  It is worth noting that section 13.20 of the current version of the Pennsylvania Suggested Standard Civil Jury Instructions ("SSJI") does not recommend instructing a jury on this component of a negligence action, believing the term to be the epitome of vagueness.  **See** Comment to § 13.20.  Instead, the recommended instruction suggests a jury be instructed to determine whether a defendant's conduct was a "factual cause" in bringing about the harm.  The proposed instruction suggests the jury be instructed that "to be a factual cause, the conduct must have been an actual, real factor in causing the harm, even if the result is unusual or unexpected.  A factual cause cannot be an imaginary or fanciful factor having no connection or only an insignificant connection with the harm."  I would not deem the use of the term "factual cause" in a jury instruction to be inconsistent with "substantial factor."  **See Ford v. Jeffries**, 379 A.2d 111, 114 (Pa. 1977) ("the issue is whether the defendant's conduct was, on the one hand, a 'substantial factor' or a 'substantial cause' or, on the other hand, whether the defendant's conduct was an 'insignificant cause' or a 'negligible cause.'").  **See also Gorman v. Costello**, 929 A.2d 1208, 1213 (Pa. Super. 2007) (SSJI provide guidance on how to fashion appropriate jury instructions on the issue of factual cause).  A trial judge has wide latitude in his choice of language when charging a jury, provided always that the court fully and adequately conveys the applicable law.  **See Hatwood v. Hospital of the University of Pennsylvania**, 55 A.3d 1229, 1235 (Pa. 2012).

*Id.* at 868 (emphasis in original). "Liability is contingent upon the probability or foreseeability of the resulting injury, **not merely the possibility that it could occur**." *Reilly*, 633 A.2d at 210 (quotation omitted) (emphasis added).

A superseding cause breaks the chain of proximate causation between a negligent act and a plaintiff's injury. A superseding cause is an act of a third person that, by its intervention, prevents an actor from being liable for harm to another that his antecedent negligence is a substantial factor in bringing about. Restatement (Second) of Torts § 440; *Trude v. Martin*, 660 A.2d 626, 632 (Pa. Super. 1995). "If in looking back from the harm and tracing the sequence of events by which it was produced, it is found that a superseding cause has operated, there is no need of determining whether the actor's antecedent conduct was or was not a substantial factor in bringing about the harm." Restatement (Second) of Torts § 440, Comment b. Superseding causes are intervening causes that operate after an actor's negligence has been committed.[3]

In determining whether an intervening force is a superseding cause of harm, guidance is found in the Restatement (Second) of Torts § 442, which provides as follows:

---

[3] Not all intervening acts are superseding causes. *Cf.* Restatement (Second) of Torts §§ 440 and 441.

The following considerations are of importance in determining whether an intervening force is a superseding cause of harm to another:

(a) the fact that its intervention brings about harm different in kind from that which would otherwise have resulted from the actor's negligence;

(b) the fact that its operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation;

(c) the fact that the intervening force is operating independently of any situation created by the actor's negligence, or, on the other hand, is or is not a normal result of such a situation;

(d) the fact that the operation of the intervening force is due to a third person's act or to his failure to act;

(e) the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him;

(f) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion.

**See also Trude, supra** (citing Restatement (Second) of Torts § 442).

Additional guidance is found in the Restatement (Second) of Torts § 447, which defines when an intervening cause may not be a superseding cause of harm. Our Supreme Court reaffirmed adoption of § 447 in **Grainy v. Campbell**, 425 A.2d 379 (Pa. 1981), wherein the Court explained:

The Restatement (Second) of Torts, § 447 (1965) (hereinafter cited as § 447) [] formulates a test of when intervening negligence will relieve antecedent negligence. In § 447, the liability of the first actor continues whenever: (a) the first actor "should have realized" that the second actor "might so act"; (b) a reasonable

- 7 -

man would not regard the second actor's action as "highly extraordinary"; or (c) the second actor's conduct is a "normal consequence of the situation created" by the first actor and "not extraordinarily negligent."

*Id.* at 381.[4]

From these formulations, I believe two related factors are most appropriate for consideration here: whether Fair's intervening negligence was extraordinary and not normal under the circumstances, and whether Fair's conduct operated independently of any situation created by the Additional Defendants. Under the circumstances of this accident, I conclude Fair's conduct was extraordinary, not normal,[5] and a superseding cause of this accident, thus relieving the Additional Defendants of any liability for the Plaintiffs' harm.

On May 1, 2012,[6] at approximately 7:30 p.m., Straw was traveling in the center northbound lane on State Route 28 in Allegheny County,

---

[4] The Court in **Grainy** noted that § 447 of the Restatement was adopted as Pennsylvania law in **Estate of Flickinger v. Ritsky**, 305 A.2d 40 (1973). **Grainy**, 425 A.2d at 381.

[5] The use of the word "normal" in §§ 442 and 447 of the Restatement (Second) of Torts is not used in the sense of what is usual, customary, foreseeable or to be expected. Instead, it means when looking at a matter after an event and knowing the situation that existed when a new force intervened, one would not regard the intervening act as extraordinary, even though negligent. **See** Comment (b) and Comment (c) to §§ 442 and 447 of the Restatement (Second) Torts, respectively.

[6] Like the Majority, I have recited facts herein taken from those considered by the trial court in ruling upon the motions for summary judgment, including

- 8 -

Pennsylvania, near the RDIC Drive exit. It was daylight, the sky was clear, traffic was light, and the highway was posted with a 55 mph speed limit. While driving north on Route 28, the hood latch on Straw's Pontiac Vibe malfunctioned, causing the hood to release and lift, blocking Straw's view of the road. Straw brought his vehicle to a stop in the center lane of the highway and activated his hazard lights. Upon stopping, Straw looked in his rearview mirror and saw no cars approaching. Straw also stated that when he looked in his rearview mirror, he saw a truck on the horizon line. He thought to himself it was a good thing the truck was far enough back for its driver to react. He estimated that while it seemed like an eternity, it was probably at least five to eight seconds before the truck crashed into his car. At no time were there any cars between his car and the truck. In fact, he did not recall any traffic in the area at the time of the crash.

Defendant Fair was driving north on Route 28 in a white F250 Ford truck. Data obtained from Fair's truck[7] indicated he was driving approximately 71 mph for 19 seconds prior to impact and that Fair did not apply the brakes of his truck until .6 seconds prior to impact. Fair admitted to taking his eyes off the road to pick up some binders that fell on the floor of his truck. When he

_____

those facts admitted by Fair during his guilty plea colloquy and those from the Pennsylvania State Police Accident Report.

[7] Data regarding the truck's speed and brake application was obtained from a download of the truck's powertrain control and restraint modules.

looked up, he noticed the Straw vehicle with its hazard lights on, but could not avoid the collision. According to Pennsylvania State Police crash reconstruction, Fair would have been able to see the Straw vehicle approximately 2,058 feet prior to impact if he were looking at the road. At a speed of 71 mph, it would have taken Fair approximately 19 seconds to travel that distance.

Fair was criminally charged for his reckless conduct. He subsequently pled guilty to homicide by vehicle, three counts of aggravated assault by vehicle, four counts of recklessly endangering another person, exceeding 55 mph by 16 mph, and driving at a safe speed.[8]

There was no impediment to Fair's view of the Straw vehicle, had he been looking at the road, or his ability to take action to avoid a collision. Nevertheless, Fair, who was traveling in excess of the speed limit, 71 mph in a 55 mph zone, did not change lanes or take any evasive action despite an abundance of time to do so. Tellingly, the truck brakes were not engaged until .6 of a second before impact, when his truck was slightly less than 60 feet from Straw's vehicle. This accident would not have happened but for Fair's failure to look at the road and see the Straw vehicle that was visible from more than 2,000 feet away.

---

[8] A person is required to drive a vehicle at a speed no greater than is reasonable and prudent under the circumstances. 75 Pa.C.S.A. § 3361. A violation of this statute is a summary offense under 75 Pa.C.S.A. § 6502.

Any "reasonable man" would certainly regard Fair's action as "highly extraordinary" under these circumstances. Every driver is taught the cardinal rule that when driving your eyes must be upon the road at all times. Even though violations of this rule occurs often and might be deemed "normal" in the context of considering negligent actions, the extent of Fair's reckless conduct in this case cannot under any measure be considered "normal," but only as extraordinary.

The Majority recognizes ordinary human experience indicates drivers may commonly violate posted speed limits, may occasionally be inattentive to the road, may occasionally drive dangerously, and may occasionally be intoxicated. Majority Opinion at 59. Although these actions cannot be condoned, it cannot be said that these transgressions are extraordinary, as they unfortunately have become common ills upon our highways. Instantly, we are not presented with the all-too-common situation of negligent inattention for a brief period of time, or the situation where a driver observes a hazard but is unable to stop in time to avoid a collision because of speeding. Instead, as stated, Fair had more than 2,000 feet of unobstructed sight on a clear day before he crashed his truck into the Straw vehicle with its hazard lights flashings. Fair tragically collided with the Straw vehicle because, for reasons unrelated to the circumstances that placed the Straw vehicle upon the highway, he took his eyes off the road while traveling 71 mph in a 55 mph zone, applying his brakes only .6 of a second before he crashed into the Straw

vehicle that was stopped on the highway with its hood raised. While the Straw vehicle certainly presented a hazard on the highway, it cannot be said that it was foreseeable that Fair would operate his vehicle in the extraordinary manner he did. This is especially so where, as here, there were multiple factors in this scenario that would have allowed Fair to avoid this collision.

Fair's conduct also cannot be said to be a "normal consequence of [any] situation created" by Additional Defendants. *See Grainy*, 425 A.2d at 381. It is "possible" that someone would drive a vehicle at approximately 71 miles per hour without looking at the roadway for nearly twenty seconds and would fail to observe a stopped vehicle with flashing hazard lights on an empty highway during daylight hours. However, it clearly is not "probable" that these actions could be deemed foreseeable. It cannot be said that Fair's recklessness was the type of foreseeable negligence that one might anticipate as contributing to any harm caused by any antecedent negligence of other parties. Fair's reckless actions were extraordinary and cannot be considered a normal consequence of any situation created by the Additional Defendants. His conduct, therefore, was the superseding cause of this accident.

Similarly, I also would conclude that Fair's conduct was a superseding force operating independently of any situation created by the Additional Defendants and, again, were not a normal result of any situation created by them. The Plaintiffs' harm was not caused by the actions of any of the Additional Defendants who may have looked at or attempted to repair the

hood latch on the Straw vehicle.  Nor was the harm caused by Straw's decision to bring his vehicle to a stop in the center lane of the highway and engage his hazard lights.  Instead, this tragic accident was caused by Fair's independent decision to take his eyes off the road while rearranging binders on the floor of his truck, all while significantly exceeding the posted speed limit.  His decision to do so was unrelated to, and not in response to, any antecedent negligence that may have been created by the Additional Defendants.  Nor was Fair's decision to take his eyes off the road a normal result of any antecedent negligence that may have been committed by the Additional Defendants. Fair's actions were the superseding cause of Plaintiffs' harm.

A review of Pennsylvania case law since the adoption of the Restatement (Second) of Torts § 447 reveals that our courts have only infrequently determined that conduct constituted a superseding cause warranting dismissal of a case on preliminary objections or the grant of summary judgment.  Even with this paucity of cases, I find a number of them to be instructive to support the result I would reach in this case.

In **Jamison v. City of Philadelphia**, 513 A.2d 479 (Pa. Super. 1986), this Court sustained the grant of preliminary objections in the nature of a demurrer, finding that the actions of a third party were a superseding cause of the appellant's injuries.  In that case, the appellant was injured when a thief negligently operated a stolen vehicle while attempting to elude police officers. The stolen vehicle, a Mazda, was valet parked on the upper level of a garage

operated by the defendant Blara Parking Corporation ("Blara"), located at Eleventh and Clinton Streets in Philadelphia. Before midnight, the Mazda was stolen by Reginald Lambert. When police observed the stolen car, they pursued it. During the pursuit, the car was operated at a high rate of speed and subsequently collided with a vehicle in which the plaintiff/appellant Jamison was riding as a passenger. Jamison sustained serious injury.

This Court held that if Blara was careless in allowing the Mazda to be stolen, it cannot be said to have been negligent toward the plaintiff/appellant, whose injury was not a foreseeable consequence of the theft. The thief's careless operation of the stolen vehicle was a superseding cause of the plaintiff's/appellant's injuries, for which Blara could not be held liable. In reaching this conclusion, we observed that the case was not one where the plaintiff's complaint averred facts sufficient to permit a finding that Blara either knew or should have known the vehicle was likely to be stolen by an incompetent driver or that the thief would drive the vehicle in a negligent or reckless manner. Had that been the case, the result might have been different. We stated, "It is fundamental that one is not to be held liable for all possible consequences, but only for the probable consequences." *Id.* at 481 (citation omitted).

I find *Jamison* particularly instructive in examining superseding cause because it demonstrates how the foreseeability of conduct—or conduct that is expected as opposed to extraordinary—can affect causation in a case. In

- 14 -

*Jamison*, it was not foreseeable or probable that the defendant Blara could have expected the vehicle would be stolen by an incompetent driver and be driven in a negligent or reckless manner. Likewise, the Additional Defendants here could not have foreseen or anticipated that Fair would operate his truck in the extraordinarily negligent manner he did when the Straw vehicle was stopped upon the highway.

I note the Commonwealth Court has found superseding cause on at least two occasions. "Although decisions by the Commonwealth Court are not binding on this Court, they may be persuasive." *In re Barnes Foundation*, 74 A.3d 129, 134 n. 2 (Pa. Super. 2013), *appeal denied*, 80 A.3d 774 (Pa. 2013) (citation omitted).

In *Beitler v. City of Philadelphia*, 738 A.2d 37 (Pa. Cmwlth. 1999), *appeal denied*, 561 Pa. 679 (Pa. 2000), a Philadelphia police officer stopped his vehicle with its roof lights activated in the left lane on the westbound side of the Schuylkill Expressway while he went over the highway median to assist Roldan, whose vehicle was disabled in the left lane on the eastbound side of the divided highway. While the officer was assisting Roldan, Beitler drove her vehicle into the rear of the police vehicle and was injured. Beitler brought an action against, *inter alia*, the City and Roldan.

Rolden filed preliminary objections to Beitler's complaint, contending that the causal chain between his car losing power and stopping on the eastbound side of the expressway and harm to Beitler on the westbound side

was too remote. Roldan asserted that the conduct of the officer constituted a superseding cause, because one could not reasonably be expected to foresee that the officer would stop his vehicle in the roadway on the other side of the highway in order to assist Roldan, rendering the officer's conduct highly extraordinary.

Referring to Section 447 of the Restatement (Second) of Torts, Roldan argued the issue was whether the actor (Roldan) should have realized that a third party might act in a particular manner; whether a reasonable person would regard the third-party act as highly extraordinary; and whether the intervening act was a normal consequence of the situation created by the actor and the manner in which the act was carried out was not extraordinarily negligent. As such, Roldan maintained his negligence, if any, was too remote a cause of Beitler's injuries and the officer's conduct was a superseding cause of the accident. The trial court sustained the preliminary objections and the Commonwealth Court affirmed, based on superseding cause.

In ***Chacko v. Commonwealth, Department of Transportation***, 611 A.2d 1346 (Pa. Cmwlth. 1992), the plaintiffs were passengers in a car operated by a diabetic who lost consciousness and control of the vehicle. The vehicle left the roadway and struck a utility pole. The trial judge found that the driver's loss of consciousness was the superseding cause of the plaintiffs' injuries and that the City of Philadelphia, which was alleged to have been negligent in designing the road and permitting placement of the utility pole,

was entitled to summary judgment. *Id.* at 1349-50 (citing *Vattimo v. Lower Bucks Hospital, Inc.*, 465 A.2d 1231 (Pa. 1983) and Restatement (Second) of Torts §§ 440 and 442). The Commonwealth Court affirmed, finding the trial court did not err or abuse its discretion in granting summary judgment on the basis of superseding cause while noting that whether a force is a superseding cause is generally a question for the fact finder. However, "in cases where a jury may not reasonably differ, it is proper for the court to make a determination of causation." *Id.* at 1350 n. 2 (citing *Vattimo*, 465 A.2d at 1234).

As in *Beitler* and *Chacko*, I believe it was proper for the trial court here to make a determination of causation. Further, I believe the trial court correctly concluded that an ordinary person would not have foreseen that the harm suffered by the Straws was a natural and probable outcome of the acts complained of on the parts of the Additional Defendants, including Straw. Therefore, I find the trial court properly concluded that Fair's conduct was a superseding cause of the accident.

Respectfully, I also take issue with other parts of the Majority's analysis.

Citing *Powell v. Drumheller*, 653 A.2d 619 (Pa. 1995), the Majority concludes that the determination of whether Fair's actions were so extraordinary and, thus, a superseding cause of Plaintiffs' injuries, is one to be made by a jury. Majority Opinion at 55, 59. This, however, is not always the case, and I do not find it to be the case under the facts presented here.

*Powell* speaks both to when a question of superseding cause is for the jury and to when it may be decided as a matter of law by a court. While it is true *Powell* held that a determination of whether an act is so extraordinary as to constitute a superseding cause is **normally** one to be made by a jury, this principle was stated in the context of when facts are in dispute, when room exists for a difference of opinion as to whether certain conduct is superseding, or where facts are such that reasonable minds could differ as to whether an intervening act or cause constitutes a superseding act or cause. *Powell*, 653 A.2d at 624. However, *Powell* also held that when undisputed facts show that conduct is so extraordinary as to constitute a superseding cause and only one inference can be drawn, it is a question of law for the court to determine whether there is a superseding cause preventing a defendant's act from being the proximate cause of an injury. *Id.*

Here, the undisputed facts surrounding the manner in which this accident occurred and in which Fair operated his truck lead to only one inference: that Fair's conduct was extraordinary. The record does not reveal any other facts from which an inference can be drawn to suggest that Fair's actions were done other than in the reckless manner stated. Therefore, I believe the question of superseding cause in this case was one of law for the court.

On the merits as to whether Fair's conduct constituted a superseding cause relieving the Additional Defendants of any antecedent negligence, I believe the Majority's analysis falls short of a proper examination of the facts and unnecessarily defers to Sections 442B and/or 449 of the Restatement (Second) of Torts. The Majority summarily dismisses the trial court's conclusion that Fair's conduct, as a matter of law, was a superseding cause of the Plaintiffs' harm by simply noting that it is not enough to establish superseding cause by alleging that an actor engaged in criminal conduct. While the Majority earlier acknowledges Section 442 of the Restatement (Second) of Torts, which addresses considerations for determining superseding cause, it engages in no factual analysis to determine if the undisputed facts establish Fair's conduct as a superseding cause as a matter of law. Instead, the Majority reasons only that ordinary human experience tells us that drivers sometimes act criminally on our roads and concludes therefore, that a jury must determine whether Fair's criminal conduct in speeding, inattentive driving, and (alleged) intoxication were so extraordinary as not to be reasonably foreseeable. Like the trial court, I too would conclude, as a matter of law, Fair's conduct was extraordinarily negligent, thus relieving the Additional Defendants of any antecedent negligence. In coming to the conclusion that Fair's conduct was a superseding cause of Plaintiffs harm, I would emphasize that it matters not whether the Additional Defendants' conduct was a substantial factor in bringing about the Plaintiffs' harm, because

a superseding cause relieves an actor from liability regardless of whether the actor's antecedent negligence was or was not a substantial factor in bringing about harm. *See* Comment (b) to 440 (definition of superseding cause). The antecedent negligence, if any, of the Additional Defendants is relieved here due to the extraordinary conduct of Fair.

I also find the Majority's reliance upon Sections 442B and 449 of the Restatement (Second) of Torts to be misplaced on the issue of superseding cause. Section 442B is of limited or special application. *See* Comment (a) to 442B. This provision does not examine the conduct of an intervening actor like Fair. Its focus is upon the negligent conduct of an initial actor, the Additional Defendants here, who increase a risk of harm that is a substantial factor in causing harm. It merely recognizes that antecedent conduct that increases the risk of harm does not relieve an actor of liability when the subsequent acts of a third person bring about the harm; that is, unless the third person intentionally causes the harm and that harm is not within the scope of the risk created by the antecedent actor's conduct. Section 442B however, does not address the effect of a superseding cause on antecedent negligence. Likewise, Section 449 addresses only the negligent conduct of an original actor. Section 449 recognizes that if a person acts in a negligent manner and those acts make it likely that a third person may act innocently, negligently, intentionally, or criminally in response to that conduct, the original actor may still be liable for the harm caused by their conduct. Like

Section 442B, Section 449 does not address the effect of a superseding cause on antecedent negligence that makes it likely that a third party may act as stated.

In summary, I do not believe it is necessary for this Court to examine whether the conduct of the Additional Defendants was a proximate cause of Plaintiffs' harm, since I would conclude that Fair's conduct was a superseding cause of the harm. Fair's extraordinary conduct was not a reasonably foreseeable or normal result of the combined actions of the Additional Defendants. His conduct was extraordinary in the degree of its recklessness that could not have been foreseen by Additional Defendants, thus relieving them of liability for any antecedent negligence. I therefore would conclude the trial court's order granting summary judgment in favor of the Additional Defendants was free of legal error and not an abuse of discretion. I, therefore, respectfully dissent.