J-A17009-21

2021 PA Super 212

| | | |
|---|---|---|
| AARON FRISCH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| JAMES RIVER INSURANCE COMPANY | : | |
| | : | |
| Appellee | : | No. 1520 EDA 2020 |

Appeal from the Order Entered July 7, 2020
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): No. 180400052

BEFORE: McLAUGHLIN, J., KING, J., and PELLEGRINI, J.[*]

OPINION BY KING, J.: **FILED OCTOBER 20, 2021**

Appellant, Aaron Frisch, appeals from the order entered in the Philadelphia County Court of Common Pleas, which granted a new trial in this case following a jury verdict in favor of Appellant.[1]  For the following reasons, we reverse the order granting a new trial, vacate the order denying Appellant's motion for delay damages, and remand for further proceedings.

The relevant facts and procedural history of this case are as follows.  On March 29, 2018, Appellant filed a complaint against Appellee James River Insurance Company.  Appellant alleged that on July 3, 2016, he was a passenger in a vehicle that was rear-ended.  Appellant claimed he suffered serious, severe, and permanent bodily injuries from the accident.  The driver

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** Pa.R.A.P. 311(a)(6) (explaining that appellant can take interlocutory appeal as of right from order in civil case awarding new trial).

of the vehicle that struck the car in which Appellant was a passenger had insufficient insurance to compensate Appellant for his injuries. At the time of the accident, Appellant was the owner of a vehicle insured by Appellee, which included underinsured motorist coverage. Consequently, Appellant sought damages from Appellee.

The case proceeded to a two-day jury trial on January 21, 2020. The jury heard live testimony from Appellant and video deposition testimony from the parties' respective expert witnesses. Relevantly, the testimony at trial made clear that Appellant had undergone various treatments and procedures in connection with a pre-existing low back injury from a prior fall. Thus, the parties disputed to what extent the July 3, 2016 car accident caused Appellant's alleged injuries (as opposed to the pre-existing condition), as well as Appellant's claim for future medical expenses and non-economic damages.

During jury instructions, the court issued the following charge:

> 7.70, pre-existing condition or injury. Damages should be awarded for all injuries caused by the accident even if: One, the injuries caused by the accident were more severe than could have been foreseen because of the plaintiff's prior physical condition; or two, a pre-existing medical condition was aggravated by the accident.
>
> If you find that the plaintiff did have a pre-existing condition that was aggravated by the accident, the defendant is responsible for any aggravation caused by the accident. I remind you that the defendant can be held responsible for only those injuries or the aggravation of a prior injury or condition that you find was factually caused by the accident.

\* \* \*

- 2 -

Factual cause. In order for the plaintiff to recover in this case, the accident must have been a factual cause in bringing about harm. Conduct is a factual cause of harm when the harm would not have occurred absent the conduct.

To be a factual cause the accident must have been an actual, real factor in causing the harm, even if the result is unusual or unexpected.

A factual cause cannot be an imaginary or fanciful factor having no connection or only an insignificant connection with the harm.

To be a factual cause, the accident need not be the only factual cause. The fact that some other causes concur with the accident in producing an injury does not relieve the defendant from liability, as long as the accident is a factual cause of the injury.

(N.T. Trial, 1/22/20, at 93-94). Following the court's instructions, the jury retired for deliberations at 11:45 a.m.

At 12:24 p.m. on the same day, the jury asked: "May we please have a copy of the law surrounding pre-existing conditions." (*Id.* at 102). The following exchange then took place:

[THE COURT]: Is there any objection to sending back the instruction?

[APPELLANT]: None from plaintiff, Your Honor.

[APPELLEE]: I object, Your Honor.

[THE COURT]: Based on what?

[APPELLEE]: I don't believe that it's appropriate to give the jury one section of the charge. So, for a particular reason, like in this one it says "May we please have a copy of the law surrounding pre-existing conditions."

I don't believe that that asks for one particular charge, and

so the question is does that include the sections on factual cause?

[THE COURT]: No, it doesn't.

[APPELLEE]: Well—

[THE COURT]: It doesn't. And "surrounding" is probably the semantics used by a layperson.

[APPELLEE]: Okay.

[THE COURT]: So, let me just take a look at it.

[APPELLEE]: **I don't have an objection, your Honor, to bring the jury back and read it to them again, but I do have an objection if that section of the charge is provided to them to go into the jury room**.

[THE COURT]: Okay. Let's bring them in and if they need further clarification, then I'm going to send it back.

[APPELLEE]: Very well.

[THE COURT]: So, we're talking 7.70 [regarding pre-existing conditions].

[APPELLEE]: Correct.

[APPELLANT]: Correct.

[THE COURT]: Okay.

* * *

[THE COURT]: So, Ladies and Gentleman of the Jury, we received your question through your foreperson. I will read it again for the record.

"May we please have a copy of the law surrounding pre-existing conditions."

Based upon my conversation with counsel, I am going to read to you again the charge relating to pre-existing

- 4 -

condition or injury…

(*Id.* at 102-04) (emphasis added). The court then re-read the entire instruction regarding pre-existing conditions. The court did not re-read the section defining factual cause. After the court re-read the pre-existing conditions instruction, the court asked if any member of the jury "needs another reading of the rule of law that I just read[.]" (*Id.* at 106). No juror asked for another reading, and neither party raised any objection to the court's charge. Thus, the court did not send back to the jury room the instruction regarding pre-existing conditions.

On January 22, 2020, the court returned a verdict in favor of Appellant for $255,000.00 in economic damages and $35,000.00 in non-economic damages. Appellant timely filed a motion for delay damages on January 24, 2020. In response, Appellee claimed that Appellant had caused a 91-day delay in the case such that he should not be entitled to delay damages for that period.

On Monday February 3, 2020, Appellee timely filed a post-trial motion, claiming, *inter alia*, the court erred when it re-read jury instruction 7.70 relating to pre-existing conditions without also re-reading the charge pertaining to the definition of factual cause. Appellee alleged that the jury might have misunderstood and/or confused the instruction, believing that it could award Appellant damages for aggravation of his pre-existing condition even if the accident was not a real factor in causing such aggravation.

Additionally, Appellee asked the court to reduce the verdict by $25,000.00 based on a credit Appellee was entitled to from a settlement Appellant had obtained with the tortfeasor/driver of the other vehicle.

In response, Appellant claimed that Appellee waived any challenge to the court's supplemental jury charge pursuant to Pa.R.C.P. 227.1, where Appellee did not object after the court re-read the instruction on pre-existing conditions. Appellant did not oppose reducing the verdict by $25,000.00.

On February 25, 2020, the court denied Appellant's motion for delay damages. Appellant initially took a premature appeal from this order, which this Court subsequently quashed. (**See** 1147 EDA 2020). On July 7, 2020, the court granted Appellee's motion for new trial, stating that it erred by declining to re-read to the jury the definition of factual cause when it re-read the charge on pre-existing conditions. This timely appeal follows.[2]

Appellant raises two issues for our review:[3]

> Whether the trial court abused its discretion and otherwise committed an error of law when it failed to re-read a jury instruction that was read to the jury less than an hour prior during the initial jury charge?

> Whether the trial court abused its discretion and otherwise committed an error of law when it improperly denied [Appellant's] post-trial motion for Delay Damages by way of

---

[2] No Pa.R.A.P. 1925(b) statement was ordered or filed.

[3] Although Appellant presents only two issues in his statement of questions presented, his argument section is divided into four sections. We remind counsel that "[t]he argument shall be divided into as many parts as there are questions to be argued[.]" Pa.R.A.P. 2119(a).

> Order dated February 24, 2020 and Supporting
> Opinion/Motion to Quash [Appellant's] appeal dated July 16,
> 2020?

(Appellant's Brief at 8) (re-ordered for purposes of disposition).

In his first issue, Appellant argues that the court informed the jury of the definition of "factual cause" in the initial jury charge, which the court read 44 minutes before the jury submitted the question regarding the law on pre-existing conditions. Appellant emphasizes that factual cause was discussed in at least two of the jury instructions. Appellant insists that the court's failure to re-read a jury instruction, which was covered on multiple occasions, cannot constitute grounds for a new trial. Appellant concludes the court's award of a new trial was erroneous, and this Court must reverse.[4] Because Appellee waived its challenge to the jury instruction, we agree Appellant is entitled to relief on this claim.

Our review of Appellant's claim implicates the following principles:

> Trial courts have broad discretion to grant or deny a new
> trial. The grant of a new trial is an effective instrumentality
> for seeking and achieving justice in those instances where
> the original trial, because of taint, unfairness or error,
> produces something other than a just and fair result, which,
> after all, is the primary goal of all legal proceedings.
> Although all new trial orders are subject to appellate review,

---

[4] In the second argument section of his brief (which does not correspond to one of the issues contained in the statement of questions involved), Appellant argues that the question of causation should not even have gone to the jury, where both experts agreed Appellant sustained injuries from this motor vehicle accident. (*See id.* at 19-23). Because we conclude on other grounds that the court should not have awarded a new trial, we need not address this argument.

it is well-established law that, absent a clear abuse of discretion by the trial court, appellate courts must not interfere with the trial court's authority to grant or deny a new trial.

\* \* \*

Each review of a challenge to a new trial order must begin with an analysis of the underlying conduct or omission by the trial court that formed the basis for the motion. There is a two-step process that a trial court must follow when responding to a request for new trial. First, the trial court must decide whether one or more mistakes occurred at trial. These mistakes might involve factual, legal, or discretionary matters. Second, if the trial court concludes that a mistake (or mistakes) occurred, it must determine whether the mistake was a sufficient basis for granting a new trial. The harmless error doctrine underlies every decision to grant or deny a new trial. A new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that he or she has suffered prejudice from the mistake.

To review the two-step process of the trial court for granting or denying a new trial, the appellate court must also undertake a dual-pronged analysis. A review of a denial of a new trial requires the same analysis as a review of a grant. First, the appellate court must examine the decision of the trial court that a mistake occurred.

At this first stage, the appellate court must apply the correct scope of review, based on the rationale given by the trial court. There are two possible scopes of review to apply when appellate courts are determining the propriety of an order granting or denying a new trial. There is a narrow scope of review: [w]here the trial court articulates a single mistake (or a finite set of mistakes), the appellate court's review is limited in scope to the stated reason, and the appellate court must review that reason under the appropriate standard.

[Conversely,] [i]f the trial court leaves open the possibility that reasons additional to those specifically mentioned

- 8 -

might warrant a new trial, or orders a new trial "in the interests of justice," the appellate court applies a broad scope of review, examining the entire record for any reason sufficient to justify a new trial.

Even under a narrow scope of review, the appellate court might still need to examine the entire record to determine if there is support for any of the reasons provided by the trial court.

The appropriate standard of review also controls this initial layer of analysis. If the mistake involved a discretionary act, the appellate court will review for an abuse of discretion. If the mistake concerned an error of law, the court will scrutinize for legal error. If there were no mistakes at trial, the appellate court must reverse a decision by the trial court to grant a new trial because the trial court cannot order a new trial where no error of law or abuse of discretion occurred.

If the appellate court agrees with the determination of the trial court that a mistake occurred, it proceeds to the second level of analysis. The appellate court must then determine whether the trial court abused its discretion in ruling on the request for a new trial. An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will. A finding by an appellate court that it would have reached a different result than the trial court does not constitute a finding of an abuse of discretion. Where the record adequately supports the trial court's reasons and factual basis, the court did not abuse its discretion.

When determining whether the trial court abused its discretion, the appellate court must confine itself to the scope of review, as set forth in our preceding discussion. If the trial court has provided specific reasons for its ruling on a request for a new trial, and it is clear that the decision of the trial court is based exclusively on those reasons, applying a narrow scope of review, the appellate court may reverse the trial court's decision only if it finds no basis on the record to support any of those reasons. As a practical matter, a trial court's reference to a finite set of reasons is

generally treated as conclusive proof that it would not have ordered a new trial on any other basis. Alternatively, where the trial court leaves open the possibility that there were reasons to grant or deny a new trial other than those it expressly offered, or the trial court justifies its decision on the "interests of justice," an appellate court must apply a broad scope of review and affirm if it can glean any valid reason from the record.

***Harman ex rel. Harman v. Borah***, 562 Pa. 455, 465-69, 756 A.2d 1116, 1121-24 (2000) (internal citations and quotation marks omitted).

Pennsylvania Rule of Civil Procedure 227.1 governs post-trial relief and provides as follows:

**Rule 227.1.  Post-Trial Relief**

(a)    After trial and upon the written Motion for Post-Trial Relief filed by any party, the court may

(1)    order a new trial as to all or any of the issues; or

(2)    direct the entry of judgment in favor of any party; or

(3)    remove a nonsuit; or

(4)    affirm, modify or change the decision; or

(5)    enter any other appropriate order.

(b)    Except as otherwise provided by Pa.R.E. 103(a), post-trial relief may not be granted unless the grounds therefor,

(1)    if then available, were raised in pre-trial proceedings or by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of proof or other appropriate method at trial; and

***Note***: **If no objection is made, error which could have been corrected in pre-trial proceedings or during trial**

> **by timely objection may not constitute a ground for post-trial relief.**
>
> Pa.R.E. 103(a) provides that the specific ground for an overruled objection, or the substance of excluded evidence, need not be stated at or prior to trial, or without having made an offer of proof, if the ground of the objection, or the substance of the evidence sought to be introduced, was apparent from the context.
>
> (2)    are specified in the motion.  The motion shall state how the grounds were asserted in pre-trial proceedings or at trial.  Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds.

Pa.R.C.P. 227.1(a)-(b) (emphasis added).

Regarding jury instructions specifically, the rules of civil procedure make clear that "all exceptions to the charge to the jury shall be taken before the jury retires."  Pa.R.C.P. 227(b).  Thus, to preserve an issue concerning the correctness of a trial court's jury charge, the complaining party must make a timely, specific objection to the charge as given.  ***Jones v. Ott***, 648 Pa. 76, 80-81, 191 A.3d 782, 784 (2018) (internal citation omitted).  "Requiring a timely specific objection to be taken in the trial court will ensure that the trial judge has a chance to correct alleged trial errors.  This opportunity to correct alleged errors at trial advances the orderly and efficient use of our judicial resources."  ***Dilliplaine v. Lehigh Valley Trust Co.***, 457 Pa. 255, 258-59, 322 A.2d 114, 116 (1974).

Assuming a challenge to the jury charge is properly preserved, in reviewing challenges to the charge:

[O]ur scope of review is to determine whether the trial court committed clear abuse of discretion or error of law controlling the outcome of the case. Error in a charge is sufficient ground for a new trial, **if the charge as a whole** is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue. A charge will be found adequate unless the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said or unless there is an omission in the charge which amounts to fundamental error. A reviewing court will not grant a new trial on the ground of inadequacy of the charge unless there is a prejudicial omission of something basic or fundamental. **In reviewing a trial court's charge to the jury, we must not take the challenged words or passage out of context of the whole of the charge, but must look to the charge in its entirety**.

*McManamon v. Washko*, 906 A.2d 1259, 1271 (Pa.Super. 2006), *appeal denied*, 591 Pa. 736, 921 A.2d 497 (2007) (internal citations and quotation marks omitted) (emphasis added). A supplemental jury charge "must be viewed in conjunction with [the original jury charge], not divorced therefrom and in isolation." *Polett v. Public Communications, Inc.*, 633 Pa. 445, 509, 126 A.3d 889, 933 (2015).

Instantly, in granting Appellee a new trial, the trial court explained:

During deliberations, the jury asked for "a copy of the law surrounding pre-existing conditions." (N.T., 1/22/20, p. 102). This [c]ourt suggested clarifying the jury's understanding of the law by sending a copy of Jury Instruction 7.70 back to the jury room. However, defense counsel objected to such an action, asserting that the jury's question did not ask "for one particular charge." (N.T., 1/22/20, p. 103). Defense counsel, instead, argued that the jury's question asked for "surrounding law," which would include sections on factual cause. (N.T., 1/22/20, p. 103). This [c]ourt retorted that the word "surrounding" was probably the "semantics used by a layperson," and re-read only Instruction 7.70 to the jury. (N.T., 1/22/20, p. 103-

104). …

\*   \*   \*

While consulting with counsel, this [c]ourt brushed off the jury's usage of the word "surrounding" as semantics. This was improper. The [c]ourt should have answered the jury's question exactly as it was written, and read Jury Instruction 13.20—Factual Cause along with 7.70—Pre-existing Condition.

It seems apparent that by only re-reading Instruction 7.70 to the jury, the jury may have misunderstood or confused the two instructions, thereby mistakenly believing that it could award [Appellant] damages for aggravation of a pre-existing condition even if the accident was not a real factor in causing such aggravation. Jury Instructions 13.20 and 7.70 should have been re-read together. By re-reading Instruction 7.70—which speaks to aggravation of prior medical conditions but which does not remind the jury that factual cause equates to the motor vehicle accident having been an actual, real factor in causing the harm—the [c]ourt erroneously highlighted the concept of aggravation of a pre-existing condition without simultaneously reinforcing the concept that the motor vehicle accident must be an actual cause of said harm.

(Memorandum of Law in Support of Court's Order, filed July 8, 2020, at 12-13).[5] We cannot agree with the trial court's rationale because the record makes clear Appellee waived its challenge to the jury instruction.

A close reading of the trial transcript shows that the jury asked for **a**

_____

[5] ***See also*** (Rule 1925(a) Opinion, filed July 21, 2020, at 4) (stating: "[O]n July 7, 2020, this [c]ourt granted a new trial on the ground that the [c]ourt erred in refusing to re-read to the jury Pennsylvania Standard Civil Jury Instruction 7.70—Pre-existing Condition or Injury in conjunction with Jury Instruction 13.20—Factual Cause during deliberations, thereby perpetuating jury confusion").

- 13 -

**copy of the law** surrounding pre-existing conditions. (**See** N.T., 1/22/20, at 102). The court asked if there was any objection to **sending back** the instruction to the jury room, and Appellee objected. Appellee's counsel stated that he did not think it was appropriate to send back with the jury a copy of the law on pre-existing conditions, without also sending back a copy of the law defining factual cause. In fact, Appellee made clear: "**I don't have an objection, your Honor, to bring the jury back and read it to them again, but I do have an objection if that section of the charge is provided to them to go into the jury room**." (**See id.** at 102-04). In light of Appellee's objection, the court re-read only the jury instruction pertaining to pre-existing conditions; if the jury needed further clarification, then the court said it would send back only that instruction with the jury to the deliberations room. (**See id.**) After the court re-read the jury instruction on pre-existing conditions, the jury foreperson stated that the jurors did not need further clarification. Consequently, the court did not send back the jury instruction on pre-existing conditions.

The record here shows that Appellee's objection was **not** to re-reading the jury instruction on pre-existing conditions without also re-reading the jury instruction on factual cause. Rather, Appellee's objection was to **sending back** only the jury instruction on pre-existing conditions. The court acquiesced to Appellee's wishes by re-reading the instruction on pre-existing conditions instead of just sending it back to the jury deliberation room, which

- 14 -

is what the jury had asked the court to do. Because Appellee did **not object** to the court re-reading the instruction on pre-existing conditions without also re-reading the instruction on factual cause, Appellee was prohibited from raising this claim for the first time in its post-trial motion seeking a new trial. **See** Pa.R.C.P. 227.1(a)-(b); Pa.R.C.P. 227(b); **Jones, supra**; **Dilliplaine, supra**. **See also Takes v. Metropolitan Edison Co.**, 548 Pa. 92, 99, 695 A.2d 397, 401 (1997) (stating: "A trial court may not eliminate the entire purpose of making a record and invalidate the directive in **Dilliplaine** simply by addressing an issue"). As our Supreme Court made clear in **Jones**: "The parties, their lawyers, and the court must be able to trust that a point for charge, once affirmatively abandoned on the record, cannot, at a whim and in contradiction of that waiver, be resuscitated, dusted off, and re-asserted in a post-trial motion[.]" **Jones, supra** at 93, 191 A.3d at 792.

As the trial court expressly stated that its award of a new trial was based on the allegedly improper jury instruction, our scope of review is limited to examining whether the record supports granting a new trial on that ground. **See Harman, supra**. Because we conclude that the court abused its discretion by considering a waived issue raised for the first time in Appellee's post-trial motion, we must reverse the court's award of a new trial.[6] **See id.**

_____

[6] Based on our disposition, we need not consider Appellant's fourth argument section (which does not correspond to one of the issues contained in the
_(Footnote Continued Next Page)_

In his second issue, Appellant argues that he was entitled to delay damages under Pa.R.C.P. 238. Appellant asserts that the court did not issue an opinion regarding why it denied Appellant's motion for delay damages in February 2020. Appellant highlights that in its Rule 1925(a) opinion filed in July 2020, the court stated it denied Appellant delay damages because the court had awarded a new trial. Appellant suggests the court's reasoning is illogical because the court did not award a new trial until July 2020, over four months after the court had already denied Appellant's motion for delay damages. Appellant claims that Appellee did not make a valid settlement offer under Rule 238 to prohibit Appellant's recovery of delay damages. Appellant insists he had a statutory right to delay damages under Rule 238, and this Court must reverse and remand for the award of delay damages. We agree some limited relief is due.[7]

Pennsylvania Rule of Civil Procedure 238 provides:

**Rule 238. Damages for Delay in Actions for Bodily**

---

statement of questions involved) claiming that the court abused its discretion when it set aside the jury verdict. (**See** Appellant's Brief at 26-33).

[7] This Court issued a rule to show cause on September 16, 2020, noting that although the July 6, 2020 order granting a new trial was an interlocutory appeal as of right, the order denying Appellant's motion for delay damages did not appear to be final or otherwise appealable. Appellant responded on September 25, 2020, stating that, should this Court overturn the order granting a new trial, the order denying Appellant's motion for delay damages would be ripe for adjudication. We agree with Appellant that because we have reversed the order granting a new trial, and in the interests of judicial economy, we can now review the order denying Appellant's motion for delay damages.

**Injury, Death or Property Damage**

(a)(1)    At the request of the plaintiff in a civil action seeking monetary relief for bodily injury, death or property damage, damages for delay shall be added to the amount of compensatory damages awarded against each defendant or additional defendant found to be liable to the plaintiff in the verdict of a jury, in the decision of the court in a nonjury trial or in the award of arbitrators appointed under section 7361 of the Judicial Code, 42 Pa.C.S. § 7361, and shall become part of the verdict, decision or award.

(2)    Damages for delay shall be awarded for the period of time from a date one year after the date original process was first served in the action up to the date of the award, verdict or decision.

(3)    Damages for delay shall be calculated at the rate equal to the prime rate as listed in the first edition of the Wall Street Journal published for each calendar year for which the damages are awarded, plus one percent, not compounded.

(b)(1)    The period of time for which damages for delay shall be calculated under subdivision (a)(2) shall exclude the period of time, if any,

(i)    after the defendant made a written offer which complied with the requirements of subdivision (b)(2), provided that the plaintiff obtained a recovery which did not exceed the amount described in subdivision (b)(3), or

(ii)    during which the plaintiff caused delay of the trial.

(2)    The written offer of settlement required by subdivision (b)(1)(i) shall contain an express clause continuing the offer in effect for at least ninety days or until commencement of trial, whichever occurs first, and shall either

(i)    be in a specified sum with prompt cash payment, or

(ii) contain a structured settlement plus any cash payment. An offer that includes a structured settlement shall disclose the terms of payment underwritten by a financially responsible entity, the identity of the underwriter and the cost.

(3) The plaintiff's recovery required by subdivision (b)(1)(i), whether by award, verdict or decision, exclusive of damages for delay, shall not be more than 125 percent of either the specified sum or the cost of the structured settlement plus any cash payment to the plaintiff.

Pa.R.C.P. 238(a)-(b). "[T]he purpose of delay damages is to alleviate court congestion by promoting earlier settlement of claims. The purpose is in no way to punish a defendant." *Schrock v. Albert Einstein Medical Center, Daroff Div.*, 527 Pa. 191, 196, 589 A.2d 1103, 1106 (1991) (internal citation and footnote omitted). Consequently:

Defendants can readily protect themselves from the assessment of delay damages by making a prompt settlement offer in writing that bears a substantial relationship to the actual damages in the case. Defendants are further protected from the assessment of delay damages where they can show that the conduct of the plaintiff throughout the course of litigation has delayed trial.

*Id.* at 196-97, 589 A.2d at 1106.

Instantly, the court returned a verdict in favor of Appellant for $255,000.00 in economic damages and $35,000.00 in non-economic damages on January 22, 2020. Appellant timely filed a motion for delay damages on January 24, 2020. In response, Appellee claimed that Appellant had caused a 91-day delay in the case such that he should not be entitled to delay damages for that period. By order dated February 24, 2020, and filed the

next day, the court denied Appellant's motion for delay damages.  As Appellant correctly observes, the court did not issue any accompanying opinion in support of its order.  In its Rule 1925(a) opinion, the court stated that Appellant's motion for delay damages was premature because no judgment on the verdict had been entered yet.  (**See** Rule 1925(a) Opinion at 3).[8] Nevertheless, under Rule 238, "[i]f a motion for post-trial relief has been filed under Rule 227.1 and a motion for delay damages is pending, a judgment may not be entered until disposition has been made of all motions filed under Rule 227.1 and this rule."  Pa.R.C.P. 238(c)(3)(i).  "This provision ensures that there will be but one appeal encompassing both the merits of the action and the damages for delay."  Pa.R.C.P. 238, Explanatory Comment.  Thus, we disagree with the trial court's statement that Appellant's request for delay damages was premature.

On this record, however, where Appellee disputed Appellant's entitlement to delay damages by claiming that Appellant caused 91 days of delay, the best resolution of this matter is to remand for further proceedings. **See Tindal v. Southeastern Pennsylvania Transp. Authority**, 560 A.2d 183 (Pa.Super. 1989) (remanding for evidentiary hearing to determine any fault-based delay caused by appellees where parties disputed appellees'

---

[8] Although the court noted that it also awarded a new trial, contrary to Appellant's claim, the court does not state that it denied the motion for delay damages because the court awarded a new trial.  (**See id.** at 4).

- 19 -

entitlement to delay damages; if, upon remand, trial court concludes that fault-based delay on part of appellees exists, it shall subtract that period from total delay time assessed against appellants).  Accordingly, we reverse the order awarding a new trial, remand for reinstatement of the jury verdict in favor of Appellant, vacate the order denying Appellant's motion for delay damages, and remand for a hearing on Appellant's entitlement to delay damages.

Order granting new trial reversed.  Order denying motion for delay damages vacated.  Case remanded for further proceedings.  Jurisdiction is relinquished.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 10/20/2021*