J-A07031-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DAVID WARD AND WENDIE WARD | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| WEST GROVE HOSPITAL COMPANY, | : | |
| LLC, D/B/A JENNERSVILLE | : | |
| REGIONAL HOSPITAL AND WEST | : | |
| GROVE CLINIC COMPANY, LLC, | : | |
| D/B/A CARDIOLOGY ASSOCIATES OF | : | |
| JENNERSVILLE, WEST GROVE | : | |
| HOSPITAL CORPORATION AND | : | |
| PAULINE COUSINEAU | : | |
| | : | |
| Appellees | : | No. 1756 EDA 2021 |

Appeal from the Judgment Entered July 23, 2021
In the Court of Common Pleas of Chester County
Civil Division at No(s):  2017-05212

BEFORE:  DUBOW, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY KING, J.:                **FILED JUNE 3, 2022**

Appellants, David and Wendie Ward, appeal from the judgment entered in the Chester County Court of Common Pleas, in favor of Appellees, West Grove Hospital Company, LLC, d/b/a/ Jennersville Regional Hospital and West Grove Clinic Company, LLC, d/b/a/ Cardiology Associates of Jennersville, West Grove Hospital Corporation and Pauline Cousineau,[1] in this negligence action.

---

[1] "At the start of trial, the parties had removed Nurse Cousineau as an individual defendant and agreed that she was the agent of the corporate defendants and was acting in the course and scope of such agency."  (Trial Court Opinion, filed September 1, 2021, at 2 n.1).

We affirm.

The trial court opinion set forth the relevant facts of this case as follows.

[Appellants] brought this action for professional liability by filing a complaint on May 16, 2017. The operative complaint, which is the third amended complaint, was filed January 8, 2018 and alleges that [Appellants] suffered injuries and damages due to the negligence of [Appellees]. The events leading to [Appellants'] cause of action began on June 8, 2015, when Mr. Ward presented to the Emergency Department at Jennersville Regional Hospital with complaints of chest pains. It was determined that Mr. Ward had not suffered an acute coronary event, but he was admitted for observation. Testing was administered, which included a treadmill stress test conducted by … Pauline Cousineau, a nurse practitioner ("Nurse Cousineau"). Mr. Ward wore hospital socks at the start of the test that came off while he was on the treadmill. Nurse Cousineau nonetheless proceeded and at the conclusion of the treadmill portion of the test, Mr. Ward's feet were blistered. Mr. Ward received treatment for his wounds and in time he was discharged from the hospital.

Mr. Ward alleged that over the ensuing days and weeks, he began to develop severe, burning pain in his feet and that over time the pain worsened and migrated to his upper extremities. Mr. Ward received medical treatment from a variety of practitioners, including family practice, neurology, pain management, and specialists in the diagnosis and treatment of chronic regional pain syndrome/reflex sympathetic dystrophy ("CRPS"). Mr. Ward contended at trial that he had suffered various injuries as a result of [Appellees'] negligence in performing the stress test in hospital socks and then bare feet, including blistering of the feet, the development of CRPS and psychological injury.

(Trial Court Opinion at 1-2).

Trial commenced on April 9, 2021. Beginning with their opening statements, both parties made light of Mr. Ward's preexisting medical conditions. Appellants' attorney's opening statement addressed these

conditions as follows:

>What I will tell you about [Mr. Ward] is he was not in perfect health. Like many gentlemen in their 50s, he had diabetes. You already heard about that in jury selection. He had diabetes. No doubt about it. He had high blood pressure. He had a couple hernia surgeries. He had, what I'm going to tell you, was a bad back.
>
>In the early 90s, he had surgery because his back was bad, and he had what they call radiculopathy, radiating pain down his large [extremities]. In [1993], he had surgery. From [1993] up until present, he hadn't had radiculopathy. Surgery took care of that, but he still had a bad back. No doubt about it. He took Vicodin for years, not a lot of it, but he took it when he needed it, no doubt about it, for his bad back.

(N.T. Trial, 4/9/21, at 8).

During trial, both parties' experts opined about the relationship between Mr. Ward's preexisting conditions and the injuries he suffered during the treadmill stress test. Appellants' experts posited that Mr. Ward's preexisting conditions caused him to suffer injuries during the stress test that were worse than could be expected. Appellees' experts testified that Mr. Ward's preexisting conditions, rather than the stress test, predisposed him to developing CRPS.

On April 19, 2021, Appellees rested their case, and the court immediately proceeded with a charging conference. Appellants' attorney requested that the court provide the jury with Pennsylvania Suggested

Standard Civil Jury Instruction 7.70[2] pertaining to preexisting conditions. Appellees' attorney argued that such an instruction was unnecessary, and the court agreed.

Following the conference, the court charged the jury. At the conclusion of the charge, Appellants' attorney made a formal, on-the-record objection to the court's omission of a Section 7.70 instruction. (*See* N.T. Trial, 4/19/21, at 165). During deliberations, the jury submitted the following question: "Is the harm in Question Number 2 limited to CRPS?"[3] (N.T. Trial, 4/20/21, at 2). The court discussed the question with counsel. Appellants' attorney responded, "I think the simple and concise answer to that question would be

_____

[2] Section 7.70 provides:

> A plaintiff who has a preexisting [physical] [psychological] condition can recover damages if the defendant's negligence:

> \* \* \*

> [(1) made worse a preexisting condition. In this regard, [name of defendant] can be held responsible only for the harm or the aggravation of a preexisting … condition that you find was factually caused by [name of defendant]'s negligence[; and]

> (2) factually caused harm worse than expected because of the plaintiff's preexisting condition.]

Pa.SSJI (Civ) § 7.70.

[3] On the verdict slip, the second question stated: "Was the negligence of [Nurse] Cousineau … a factual cause of any harm to the plaintiff?" (Verdict Slip, filed 4/20/21, at 1).

no." (*Id.*) The court accepted this suggestion and indicated, "I'm going to answer it no." (*Id.* at 3).

On April 20, 2021, the jury returned its verdict. The jury specifically found that Nurse Cousineau was negligent. (*See* Verdict Slip at 1). The jury also found that Nurse Cousineau's negligence was a factual cause of harm to Appellants. On the verdict slip, however, the jury included a handwritten notation explaining its conclusion that Nurse Cousineau's negligence: "Was a factual cause of harm in the form of blisters to [Mr. Ward's] feet. Was not a factual cause of harm in the form of CRPS." (*Id.*) Consequently, the jury awarded $20,000.00 to Mr. Ward and $0.00 to Mrs. Ward for her related claim of loss of consortium.

On April 29, 2021, Appellants timely filed a post-trial motion claiming that the court erred by failing to provide a Section 7.70 instruction. The court denied Appellants' post-trial motion on July 13, 2021, and Appellants filed a *praecipe* to enter judgment on July 23, 2021. On July 26, 2021, Appellants timely filed a notice of appeal. The court ordered Appellants to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and Appellants timely complied.

Appellants now raise three issues for our review.

> Did the trial court abuse its discretion or commit an error of law in refusing to instruct the jury as to preexisting conditions in accordance with SSJI 7.70, which controlled the outcome of the case?
>
> Did the trial court abuse its discretion or commit an error of

- 5 -

law in denying [Appellants'] post-trial motion for a new trial on damages due to its failure to instruct the jury as to preexisting conditions as set forth in SSJI 7.70, which controlled the outcome of the case?

In the alternative, did the trial court abuse its discretion or commit an error of law in denying [Appellants'] post-trial motion for a new trial on causation and damages due to its failure to instruct the jury as to preexisting conditions as set forth in SSJI 7.70, which controlled the outcome of the case?

(Appellants' Brief at 2-3).

Appellants' claims are related, and we address them together. Appellants emphasize the experts' testimony that Mr. Ward's "preexisting medical conditions predisposed him to develop CRPS, and his injuries would not have been so severe but for his preexisting conditions." (*Id.* at 23). Given this testimony, Appellants contend that a Section 7.70 instruction was "relevant and necessary to explain to the jury that [Appellants were] entitled to recover damages if [Appellees'] negligence 'factually caused harm worse than expected because of the plaintiff's preexisting condition.'" (*Id.*) (quoting Pa.SSJI (Civ) § 7.70). Relying on *Gorman v. Costello*, 929 A.2d 1208 (Pa.Super. 2007), Appellants assert that the trial court's failure to provide the requested instruction constituted a fundamental error that controlled the outcome of this case. Appellants conclude that the court should have granted

their post-trial motion, and they are entitled to a new trial as to damages.[4]

We disagree.

The following scope and standard of review apply to our review of challenges to jury instructions:

> [O]ur scope of review is to determine whether the trial court committed clear abuse of discretion or error of law controlling the outcome of the case. Error in a charge is sufficient ground for a new trial, if the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue. A charge will be found adequate unless the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said or unless there is an omission in the charge which amounts to fundamental error. A reviewing court will not grant a new trial on the ground of inadequacy of the charge unless there is a prejudicial omission of something basic or fundamental. In reviewing a trial court's charge to the jury, we must not take the challenged words or passage out of context of the whole of the charge, but must look to the charge in its entirety.

***Frisch v. James River Insurance Company***, 265 A.3d 765, 773 (Pa.Super. 2021) (emphasis omitted) (quoting ***McManamon v. Washko***, 906 A.2d 1259, 1271 (Pa.Super. 2006), *appeal denied*, 591 Pa. 736, 921 A.2d 497 (2007)). Additionally, our Supreme Court "has never adopted the Pennsylvania Suggested Standard Jury Instructions, which exist only as a reference material available to assist the trial judge and trial counsel in

_____

[4] In the alternative, Appellants suggest that they are entitled to a new trial on causation and damages "because those issues are intertwined and the issue of liability has neither been fairly determined nor is free from doubt." (Appellant's Brief at 31) (internal quotation marks omitted).

preparing a proper charge." *Jeter v. Owens-Corning Fiberglas Corp.*, 716 A.2d 633, 636 (Pa.Super. 1998) (quoting *Commonwealth v. Smith*, 548 Pa. 65, n.11, 694 A.2d 1086, 1094 n.11 (1997)).

In negligence cases, "[t]he tortfeasor must take his victim as he finds him." *Fretts v. Pavetti*, 422 A.2d 881, 885 (Pa.Super. 1980).

> [B]ecause a tortfeasor must take the victim as he finds him, the tortfeasor is liable for the full extent of the victim's injuries. Thus, a tortfeasor remains responsible for the victim's injuries, even if the victim's particular sensibility resulted in more harm than the tortfeasor could have foreseen.

*Lebesco v. Southeastern Pennsylvania Transp. Authority*, 380 A.2d 848, 852 n.2 (Pa.Super. 1977).

In *Gorman, supra*, this Court addressed a similar issue regarding the propriety of jury instructions in a negligence case. Specifically, the appellant was injured after her vehicle was struck by the appellee's vehicle. The appellant brought a negligence action against the appellee, and the matter proceeded to trial. Following the jury charge, the parties requested that the court provide an additional instruction on "the point of factual cause." *Gorman, supra* at 1211. In response, the court read a **portion** of Pennsylvania Suggested Standard Civil Jury Instruction 3.15. The jury later returned a verdict finding that the appellee was negligent, but the negligence was not a factual cause of the appellant's injuries. The jury did not reach the question of damages.

On appeal, the appellant argued that the court committed reversible

error by reading only a portion of the suggested instruction on factual causation. This Court agreed:

> Our review of the transcript indicates that the trial court read the instruction as far as the first phrase of the bracketed portion of the third paragraph, *i.e.*, "Use the following if you have not already used Instruction 3.00," and, without reviewing the definition that followed, concluded that there was no need to continue with reading SSJI 3.15 to the jury because it had already provided the jury with SSJI 3.00. Thus, according to the SSJI itself, the jury was not fully instructed as to the definition of "factual cause."
>
> This Court has previously ruled that when juries are given incomplete instructions, a new trial is required. Jury instructions must contain correct definitions of legal terms.
>
> While we recognize that the SSJI are not binding on trial courts, the SSJI are nonetheless instructive. In the case *sub judice*, a complete definition of factual cause was available to the trial court both from SSJI Civ 3.15 as well as from the proposed jury instructions submitted to the court prior to the commencement of the trial. The trial court simply omitted the definition from its instruction. We determine that without a complete definition of factual cause, the jury was lacking an essential tool needed to make an informed decision based on correct and complete legal principles relevant to its verdict on the issue of damages.

*Id.* at 1213 (internal citations omitted).

Instantly, the court denied Appellants' request for a Section 7.70 instruction. The court subsequently charged the jury as follows:

> Now, you must decide whether Nurse Cousineau was negligent. If you decide that she was, then you must decide whether her negligence was a factual cause of the plaintiff's injuries. If you so decide, you must then decide the amount of damages the plaintiff sustained as a result of her negligence.

Now, in order for the plaintiff to recover in this case, Nurse Cousineau's negligent conduct must have been a factual cause in bringing about harm. The conduct is a factual cause of harm when the harm would not have occurred [but for] the conduct.

**To be a factual cause, the conduct must have been an actual, real factor in causing the harm, even if the result is unusual or unexpected.** A factual cause cannot be an imaginary or fanciful factor having no connection, or only a[n] insignificant connection, with the harm.

**To be a factual cause, Nurse Cousineau's conduct need not be the only factual cause. The fact that some other causes concur with the negligence of Nurse Cousineau in producing an injury does not relieve her from liability**, as long as her or her own negligence is a factual cause of the injury.

(N.T. Trial, 4/19/21, at 145-46) (emphasis added).

Although the court's charge did not include a verbatim recitation of Section 7.70, the court addressed the principles underpinning the suggested instruction. Specifically, the court instructed that Nurse Cousineau's conduct could be a factual cause of Mr. Ward's harm, even if the result was unusual or unexpected. *See Fretts, supra*; *Lebesco, supra*. Within the context of this particular trial, "unusual or unexpected" results necessarily referred to the interplay between Mr. Ward's preexisting conditions and his injuries from the stress test. Thereafter, the court further embraced the principles of Section 7.70 in its response to the jury's question about whether the harm in this case was limited to CRPS. (*See* N.T. Trial, 4/20/21, at 2-3). By accepting Appellants' attorney's recommendation and answering this question in the negative, the court reinforced the notion that Appellees were liable for the full

- 10 -

extent of damages that they inflicted. **_See Lebesco, supra_**.

Regarding Appellants' argument that the omission of a Section 7.70 instruction is akin to the fundamental error at issue **_Gorman_**, the instant case is distinguishable. **_Gorman_** addressed a situation where the court provided an incomplete definition for a relevant legal principle. Here, we cannot say that the instruction provided a similarly incomplete description of the relevant legal principles. Further, the instant case differs from **_Gorman_** because it does not involve a situation where the jury did not award damages. Here, the jury determined that Nurse Cousineau's negligence was a factual cause of some compensable harm. Thus, to the extent that Section 7.70 serves the function of informing a jury about a particular circumstance where it can award damages, the absence of a verbatim recitation of Section 7.70 did not deny Appellants the recovery of some damages.

Based upon the foregoing, we conclude that there was no omission in the jury charge that amounted to a fundamental error. **_See Frisch, supra_**. Accordingly, the court did not abuse its discretion or commit an error of law that controlled the outcome of this case, and we affirm. **_Id._**

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>6/3/2022</u>